HAWKINS, J., absent, and will later announce his position.

BROWN, C. J. Upon a full and thorough examination of the questions involved in the foregoing opinion, I fully concur with the reasoning and the conclusions expressed therein.

NATIONAL LIFE ASS'N v. PARSONS. †
(No. 6696.)

(Court of Civil Appeals of Texas. Galveston. Oct. 27, 1914. Rehearing Denied Nov. 19, 1914.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITIONS.

In an action on life policies, defendant assigned that the court erred in rendering judgment against it for 12 per cent. damages or penalty for failing to pay the policies and $600 as a reasonable attorney's fee, in that such sums did not accrue until after legal proof of decedent's death, which was not as a matter of law, or fact established in the case, by reason of the uncertainty of such death. Under this, defendant asserted as propositions that where there was no proof of death, or where the proof was insufficient to reasonably establish death of assured, no legal demand for payment could authorize suit on failure to pay the policies, penalty, or reasonable attorney's fee, and that where the proofs and demand for payment, together with the evidence on the final trial, made it to reasonably appear that the failure to pay the policies was not willful, the statute assessing the penalty and attorney's fee did not apply as a matter of law, though judgment was obtained on final trial. Held, that the assignment did not relate to the same questions of law raised by such propositions, and the propositions following those stated being germane to the assignment only, the propositions specified would be regarded as waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. INSURANCE (§ 602*)—LIFE INSURANCE POLICIES—FAILURE TO PAY—PENALTY—PROOF OF DEATH.

In determining whether a life insurance company was liable for the statutory penalty for failing to make payment within a specified time after the filing of proofs of death, only such proofs as were submitted to the insurer could be considered.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498; Dec. Dig. § 602.*]

3. INSURANCE (§ 543*)—DEATH OF INSURED—PROOFS.

Affidavits that assured, who was employed as a warehouseman in a railroad warehouse, went into the building a few minutes before it was destroyed by explosion and fire, and that

thereafter pieces of cloth identified as like the clothing he wore were found, and pieces of bone also discovered in the débris and shown by scientific examination to be parts of a human skull, were sufficient to show assured's death, within the provision of the policies that proof of death or disability shall be furnished to insurer, and shall comprise satisfactory statements and evidence· establishing a claim under such policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1347; Dec. Dig. § 543.*]

4. INSURANCE (§ 602*)—LIFE POLICY—LOSS— FAILURE TO PAY — PENALTY — ATTORNEY'S FEE.

Rev. St. 1911, art. 4746, provides that where a loss occurs, and a life insurance company liable therefor fails to pay the same after 30 days after demand therefor, such company shall be liable to pay to the policy holder, in addition to the amount of the loss, 12 per cent. damages, together with a reasonable attorney's fee for the prosecution and collection of such loss. Held, that an insurance company is liable for the penalty and attorney's fee so provided, when it fails to pay the loss on proper proof within the time specified, though such failure is not willful, but in good faith, pursuant to the insurer's belief that, notwithstanding the proof and demand, the assured was not dead, or that it had some other good defense to the suit.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498; Dec. Dig. § 602.*]

5. INSURANCE (§ 602*)—PROOF OF DEATH— FAILURE TO PAY—PENALTIES—STATUTES— APPLICATION—ASSESSMENT COMPANIES.

Laws 1909, c. 108, § 65, containing a provision imposing a penalty on insurance companies for failure to pay losses within 30 days after proofs and demand, declared that none of the provisions "of this act" should apply to assessment companies. The statute, when incorporated into the Revised Statutes of 1911, was divided into chapters under title 71, and article 4957 provided that none of the provisions "of this act" (chapter 15) should apply to assessment insurance companies, but the provision imposing liability on insurance companies for penalties and attorney's fees was placed in chapter 2. Held, that such alteration constituted an amendment of the law, and rendered assessment companies liable to the provision for penalties and attorney's fees.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498; Dec. Dig. § 602.*]

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by Lena Parsons against the National Life Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Mantooth & Collins, of Lufkin, V. E. Middlebrook and S. M. Adams, both of Nacogdoches, and John T. Garrison, of Houston, for appellant. Blount & Strong, of Nacogdoches, and Kahn, Williams & King, of Houston, for appellee.

McMEANS, J. Lena Parsons brought this suit against the National Life Association to recover $6,000, the sum of two Life Association policies issued by the defendant to George Frank Parsons, the assured, payable at his death to Lena Parsons, his stepmother, who was named in the policies as the beneficiary, and for 12 per cent. on said amount as penalty for nonpayment of the policies after the presentation of proofs of death and demand for payment, and for 10 per cent. as reasonable attorney's fees, with 6 per cent. per annum interest from May 1, 1913. Defendant, among other defenses not necessary to be here stated, pleaded that the assured, George Frank Parsons, was not dead, but was still living, and denied that the defendant was such an insurance company as that a penalty for failure to pay upon receipt of proofs of death and demand for payment could be exacted under the statute. The case was tried before a jury and resulted in a verdict in favor of plaintiff in response to special issues, upon which verdict a judgment was rendered in her favor for the principal of the policies sued on, for 12 per cent. thereon as penalty, 10 per cent. as reasonable attorney's fees, and interest at the rate of 6 per cent. per annum, aggregating $7,375. From this judgment the defendant, after its motion for a new trial had been overruled, has appealed.

[1] Appellant's first assignment of error complains of the refusal of the court to sustain its general demurrer to plaintiff's petition, and the second assignment is addressed to the action of the court in not sustaining its third special exception to the petition. The fifth assignment is as follows:

"The court erred in rendering judgment in any event against the defendant for $720, 12 per cent. damages or penalty for failing to pay the sum of the policies, and $600 as reasonable attorney's fees, said sums never accruing until after legal proof of death of the assured, which was not as a matter of law or fact established in this case, by reason of the uncertainty of the death of the assured, George Frank Parsons."

Under the fifth assignment appellant asserts these propositions:

"(1) Where there is no proof of death, or where the proof is insufficient to reasonably establish the death of the assured, no legal demand for payment can be effective to authorize suit on failure to pay the policy, penalty, or reasonable attorney's fees." (2) Where the proofs of death and demand of payment, together with the evidence on final trial, made it to reasonably appear that the failure to pay the policies is not willful, the statute (article 4746) assessing 12 per cent. penalty and reasonable attorney's fees does not apply as a matter of law, although judgment obtained on final trial.

The fifth assignment does not relate to the same questions of law raised by the first and second, and the propositions following the fifth are germane to it only; and therefore the consideration of the first and second must be regarded as waived, and we will give consideration only to the questions raised by the fifth.

The proofs of the death of George Frank Parsons, before demand for payment was made, consisted of the following:

Mrs. Lena Parsons, the beneficiary, presented to the defendant her affidavit, in which, among other things, she stated:

"The said George F. Parsons, from the date of said policies to the time of his death on March 2, A. D. 1913, was in good health and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

was engaged at said time by the Houston, East & West Texas Railroad Company as warehouse and check clerk in the town of Lufkin, Angelina county, where he had been so engaged for about three years prior to his said death. That no predisposing cause to his death existed, but he was suddenly killed from the effects of the explosion of dynamite and gasoline in the warehouse and depot of the Houston, East & West Texas Railroad Company, at about 10 o'clock p. m. of March 2, A. D. 1913. That said George F. Parsons was in said depot and warehouse at the time of said explosion, which completely wrecked the building and practically destroyed his entire person. That immediately after said explosion the building in its wrecked condition was set on fire, and the wrecked portions thereof, together with a number of box cars adjacent thereto, were completely destroyed by fire. That only portions of the skull, hair, and clothing of the said George F. Parsons were recovered, a copy of the scientific examination of which, showing the results of such examination, is hereto attached and made a part hereof for the purpose of showing the death of George F. Parsons, and in addition thereto a copy of an affidavit made by Mack A. Holland, together with a copy of an affidavit made by Jeff Hudson and Albert Martin, showing that said George F. Parsons was in said building where said explosion occurred at the time thereof, having entered the same just a few minutes prior to said explosion. That except the particles of skull, hair, and clothing mentioned hereinabove, no portions of the body of the said George F. Parsons have been recovered, and that said George F. Parsons, when last seen, was entering said building from two to five minutes prior to said explosion."

Also the affidavit of Mack Albert Holland, which is as follows:

"I was the night operator at the Houston, East & West Texas Railroad depot on the night of March 2d, when the explosion occurred which wrecked the depot. The explosion occurred at 10:30 o'clock p. m. on said day. I was well acquainted with Frank Parsons, who lost his life in the explosion above mentioned. I have known him since November 1, 1912. He was warehouseman for the Houston, East & West Texas Railroad Company at the time. Mr. Parsons came into ticket and telegraph office at about 9:55 p. m. on the evening of said day. I glanced around and saw who it was, and he went around to where he generally works, and stopped about one-half of a minute, and came back and asked me to 'let's go and get a cup of coffee,' which I told him that I had just been over and had a piece of pie and a glass of milk, and he stated, 'That don't make any difference; come and have one with me.' I told him I never refused anything, and would go with him and take one, and we both started to the W. O. W. restaurant, and got about halfway, when Frank stated that he had some unfinished business in the warehouse that had to be attended to right away, and for me to go over and order him a cup of coffee and a piece of pie, after which I never saw him any more, which was about four minutes before the explosion occurred. After he made the above statement, he turned and went back to the warehouse. I saw him step into the baggage room, and I couldn't see him any further. We had gotten on the railroad at the crossing when he turned back, and I had gotten on the concrete walk leading from the railroad to the restaurant when he entered the baggage room. I walked into the restaurant and gave the order, and had been furnished two cups of coffee and two pieces of pie, and was fixing to drink my cup, when the explosion occurred. He had a desk in the freight room near the northeast corner. I have a distinct recollection of the kind of clothing he had on that night, which

was a gray suit. I have been shown the pieces of clothing said to have been found at the place where the ground was torn up inside the freight house, and I am able to say that the cloth in these pieces is to the best of my knowledge the same goods he had on that night at the time I saw him last. I went on duty at 6 o'clock that night, and saw Mr. Parsons at about 7:30 in the office, and spoke to him. He left soon; I suppose went to church; and he came back at the time above mentioned."

Also the affidavits of Jeff Hudson and Albert Martin, as follows:

"Before me, the undersigned authority, on this day personally appeared Jeff Hudson and Albert Martin, each of whom, after being by me duly sworn, upon his oath deposes and says: We went to the depot of the Houston, East & West Texas Railroad on the night of March 2, 1913, at 9:45 p. m., and went into the waiting room, and were in the waiting room when the explosion occurred. Frank Kee was also in the waiting room with us at the time, and there were two other men in the room with us who we don't know. (Witness Hudson alone says, in addition to the above:) That just before the explosion, about one minute and not over one and a half minutes, he heard some one walking in the direction of the explosion, he thinks it was in the ticket office, but can't be sure, but is sure that it was somewhere in the depot in the direction of the explosion."

Also a certified copy of the order of the county judge of Angelina county reciting that "Frank Parsons departed this life about March 2, 1913," and appointing Mrs. Lena Parsons temporary administratrix of his estate. Also report by Dr. James J. Terrell, professor of pathology, Medical Department of the University of Texas, at Galveston, upon pieces of bones submitted to him by Dr. R. B. Bledsoe, of Lufkin, in which he says:

"First. From the general appearance of the bones to which my examination was confined, they are undoubtedly fragments of skull bones, and are fresh or green bones. Second. The precipitin test, with properly immunized rabbit serum, demonstrated absolutely the presence of human blood serum on the bones numbered 1, 2, 3, and 4. Third. On bones numbered 1, 2, 3, and 4 are short bits of hair. Three of these were removed and examined microscopically."

His conclusion from this examination is stated thus:

"Every feature shown in these hairs is consistent with human hair, although the scant amount present renders an absolute opinion difficult at this time."

No question is made as to the sufficiency of demand for payment after the foregoing proofs of death were made to defendant, or as to the time the proofs were presented and demand made.

[2] In deciding the question raised by the fifth assignment, we think that only the proofs of death submitted to the defendant can be properly looked to in determining whether the failure of defendant to pay the amount of the policy, or rather its refusal to pay after demand, rendered it liable for the penalty of 12 per cent. and reasonable attorney's fees for the prosecution and collection thereof. The assignment under discussion does not raise the question of the sufficiency of the findings that the insured was

killed in the explosion at the depot in Lufkin, nor is that question raised by any other assignment presented in appellant's brief.

[3, 4] Each policy contained this provision:

"Proof of death or disability of the insured, shall be furnished to the association at its home office, which proofs shall comprise satisfactory statements and evidence establishing any claim under this policy, and such statements must comply with the association's forms in use at the time of death or disability of the insured."

We think the proofs were in compliance with the requirements of the terms of the policies, and prima facie show the death of the insured, and therefore a finding of their sufficiency by the trial court is one that the appellate court is not at liberty to disturb. We cannot agree to the contention, made by appellant in its second proposition under the fifth assignment, to the effect that if the failure to pay the policies is not willful the statute providing for the assessment of a penalty and attorney's fees does not apply as a matter of law, although judgment may be obtained on final trial. Article 4746, Revised Statutes 1911, contains this language:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay to the holders of such policy, in addition to the amount of the loss, twelve per cent. damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss."

Under this article an insurance company becomes liable for the penalty and attorney's fees when proper proof of death has been made in conformity with the requirements of its policies, where, upon a trial, the right of the policy holder to recover the loss is established, and proper demand for payment has been made, even though the company may in good faith have believed that, notwithstanding the proof and demand, the insured was not dead, or that it had some other good defense to the suit. The statute does not make the liability of the company depend upon the willful refusal of the company to pay the loss, or its good faith in contesting its liability.

This ruling is not in conflict with the ruling of the Court of Civil Appeals of the Fourth District in Southwestern Insurance Co. v. Woods National Bank, 107 S. W. 114, cited by appellant, as we understand that decision. In that case there was no denial of liability, but the evidence showed that there were two claimants, one the beneficiary named in the policy, which was the estate of the assured, and the other a bank claiming to be assignee thereof from the insured, and the company merely withheld payment until it could be established in some proper way which was entitled to the payment. In that case the court quotes from its decision in

170 S.W.—66

Stevens v. Insurance Co., 26 Tex. Civ. App. 156, 62 S. W. 824, as follows:

"We are of opinion that in a case where the beneficiary is uncertain by reason of conflicting claims, and the company has the right to a bill of interpleader, as in this case, and it proceeds promptly and properly in this regard, as has been determined here, it is not liable for penalties."

And it continues:

"Of course it must appear that the refusal to pay was made in good faith for the purpose of discovering the true and lawful owner of the fund, and not for the purpose of gaining time, or for any other ulterior object."

We have no quarrel with that decision, but, on the contrary, approve it; but that case is not authority for the contention here made that an insurance company which fails to pay a loss after proper proofs have been submitted and within 30 days after due demand is not liable for the penalty and attorneys' fees upon the loss being established in court, when the refusal to pay is based solely upon the contention of nonliability made in good faith. The assignment and the proposition thereunder are overruled.

[5] Appellant contends under its sixth assignment, which sufficiently raises the point, that Revised Statutes, article 4746, authorizing the recovery of a penalty and attorney's fees in a suit on a contract of insurance for defendant's failure to pay the claim within a specified time, is not applicable to assessment companies, to which class appellant belongs, and the judgment allowing a recovery of a penalty and attorney's fees against defendant was erroneous. On this issue we find as a fact that the appellant was and is an "assessment company," as that term is used in section 65, General Laws 1909, page 214, which reads as follows:

"None of the terms or provisions *of this act* shall apply to nor in any wise affect fraternal beneficiary associations as defined by the laws of this state, nor apply to companies carrying on the business of life or casualty insurance on the assessment or annual premium plan, under the provisions of articles 3090, 3091 and 3092, Revised Civil Statutes of the State of Texas" (1895).

This act seems to have been an entire revision and re-enactment of all laws relating to the subject of insurance, and superseded all laws theretofore existing in reference thereto. Under the provisions of section 65, above copied, we think it clear, had the law not been changed at the time of issuance of the policies in question, the appellant, under the provisions of article 3092, Revised Statutes 1895, would have been excepted from those classes of insurance companies from which a penalty and attorney's fees might have been recovered in case of failure to make payment of a loss within 30 days after a demand therefor had been made. In making the revision of the Statutes of 1911 the revisors, under title 71, divided the act of 1909 into chapters, and in chapter 15 we find the following:

"Art. 4957. None of the terms or provisions of this chapter shall apply to, nor in any wise

affect, fraternal beneficiary associations as defined by the laws of this State, nor apply to companies carrying on business of life or casualty insurance on the assessment or annual premium plan, under the provision of this title."

This chapter is one containing general provisions relating to the subject of insurance, and does not contain the provision imposing penalties and attorney's fees upon delinquent insurance companies. Thus we see that the act of 1909 made the exception apply to the provisions of that act, and that article 4957, as arranged by the codifiers, makes the exception apply to the terms and provisions of chapter 15, thereby removing the exemption of such companies as appellant from liability for penalties and attorney's fees, which provision is in chapter 2 of that title. Association v. Hagelstein, 156 S. W. 355. It may be that it was only a mistake on the part of the codifiers in using the word "chapter," instead of "title"; but thus is the law written, and it is our duty to construe it as we find it, not to make it. The assignment is overruled.

The seventh assignment of error is as follows:

"The court erred in its charge to the jury, wherein he charged: 'Did the explosion at Lufkin in the depot cause the death of George Frank Parsons?' Said charge is on the weight of the evidence, in that it assumed that George Frank Parsons was dead, and, his death being assumed, was such death caused by the explosion at Lufkin at the depot?"

We are of the opinion that the charge is not susceptible to the complaint made of it. It was the contention of the plaintiff that the insured was killed by the explosion, while the defendant strenuously maintained that he was not. No contention was made that the insured had met his death in any other manner. If Parsons was dead, the contingency had arisen which made defendant liable on its policies; but the petition charged that he was killed by the explosion. We think that the charge could not in any wise have misled the jury.

There being no reversible errors in the record, the judgment of the court below is affirmed.

Affirmed.