**NATIONAL LIFE CO. v. McKELVEY et al.**

No. 13245.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 18, 1935.

Rehearing Denied Nov. 22, 1935.

E. C. Corry, of Des Moines, Iowa, and Thompson & Barwise and Seth Barwise, all of Fort Worth, for appellant.

M. Hendricks Brown, Marvin H. Brown, Jr., and Marvin B. Shannon, all of Fort Worth, for appellees.

MARTIN, Justice.

On or about September 20, 1912, the National Life Association, an insurance corporation organized under the laws of the state of Iowa, issued a policy of life insurance to John H. McKelvey, by virtue of which the company contracted to pay to his wife the sum of $2,000 in the event of his death while said policy was in force and effect.

On January 22, 1919, Mrs. McKelvey died, and the insured's children were made beneficiaries in said policy of insurance.

About February 4, 1929, the insurer changed its name to the National Life Company but continued to carry on its former relations with its customers without any change in the form of policy. The form of McKelvey's policy is what is known as an "assessment policy," by the terms of which, when an assessment was levied, he was given an entire month in which to pay the same. These assessments were levied to be paid in the months of January, April, July, and October of each year. Proper notice of the July, 1932, assessment was mailed by the company to the insured, but he did not pay the same and on August 14th died. Proofs of death were furnished by the beneficiaries, but the company refused payment upon the ground that the policy lapsed for nonpayment of the July, 1932, assessment. The beneficiaries brought suit in the Sixty-Seventh dis-

trict court of Tarrant county for the amount of the policy, for 12 per cent. statutory penalty, and for reasonable attorneys' fees. Upon proper issue joined, in which no questions of fact were raised, the court rendered judgment for the plaintiffs for the items sued for, and the defendant appealed.

Quoting from the able brief of appellant: "The most important principle to be determined by this court is the question of whether or not life insurance companies which are operating on the assessment plan are subject to the same statutes as are companies which are operating on a legal reserve basis. If this court finds that assessment or natural premium companies as are described in chapter 5 of title 78 [section 4781 et seq.] of the Revised Civil Statutes of 1925 are subject to and controlled by the general insurance laws of chapter 3 of title 78 [article 4716 et seq.], then this judgment must be affirmed. If, however, there is a distinction between assessment companies and legal reserve companies, as this defendant believes the law clearly recognizes, then the judgment will have to be reversed." We adopt this language as a fair statement of the real issues in the trial court and in this court. Stated in other words, if appellant, a foreign insurance company, conducted on the assessment plan, is subject to the provisions of chapter 3, tit. 78, R.C.S., then the judgment of the trial court is amply sustained; if it is not so subject, then it would be our duty to reverse and render. Assignments of error and propositions thereunder group themselves around this paramount and controlling question.

Evidently the learned trial court considered the question as one foreclosed by the decision of the San Antonio Court of Civil Appeals in the case of National Life Ass'n v. Hagelstein, 156 S.W. 353, and the case of National Life Association v. Parsons, 170 S.W. 1038, 1041, by the Galveston Court of Civil Appeals. His judgment is directly in line with these authorities. They both hold directly that such company is subject to the general provisions of article 4732 included in chapter 3, title 78, R. C.S. 1925. The pertinent features of this statute here invoked by appellees and applied by the trial court are:

"Art. 4732. *Policies shall contain what.* —No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows:

"1. * * *

"2. For a grace of at least one month for the payment of every premium after the first, which may be subject to an interest charge, during which month the insurance shall continue in force, which may stipulate that if the insured shall die during the period of grace, the overdue premium will be deducted in any settlement under the policy."

■ We fail to discover any material distinction in principle between the Hagelstein Case, supra, and the case at bar. The Supreme Court refused a writ of error in that case and, so far as we have been able to learn, no subsequent decision of any Texas court has overruled or abridged the effect of it. We are cited to the language of Justice Critz in the case of Logan v. Texas Mutual Life Insurance Association, 121 Tex. 603, 51 S.W.(2d) 288, 53 S.W. (2d) 299, as, "if not expressly overruled," being "directly contrary to the opinion of Justice Fly in the Hagelstein Case." An examination of this authority reveals the fact that the insurer in the case was a Texas corporation, not a foreign corporation, and was one organized under the express provisions of Texas statutes relating to companies formed in this state on the assessment plan, without reserves, capital stock, or profits, conducted purely on a fraternal basis. The effect of the holding, of course, should be limited to the particular class of case presented to the court at the time. If there were no distinguishing differences between the two cases, then, of course, appellant would be right in its contention. But there is no contention that appellant is other than a corporation formed for profit; that it maintained a reserve is shown by the policy itself; and that it was not a Texas corporation is admitted.

The contentions of appellant in this case have each and all, with one exception, been decided adversely in the Hagelstein and Parsons Cases, and we do not feel inclined to disturb what seems to us to be settled law. National Life Association v. Hagelstein (Tex.Civ.App.) 156 S.W. 353; National Life Association v. Parsons (Tex. Civ.App.) 170 S.W. 1038.

■ The one exception is raised by appellant's second assignment of error to the

effect that since the policy itself provided an entire month in which the insured could pay the July premium, the trial court was in error when he held the statutory month of grace to begin at the expiration of the month of payment. This presents a somewhat novel question. The policy provided that:

"The stipulated payments and quarterly calls required under this contract and which the Insured hereby agrees to pay to the Association in order to continue and keep said contract in force, are as follows: (a) For the Reserve Fund the sum of fifty cents for each year of the insured's age, as stated herein, for each one thousand dollars of insurance carried, any unpaid portion of which is a lien on amount due under this policy until paid. (b) For the Benefit Fund the Insured agrees to pay quarterly, in the months of January, April, July and October of each year, an amount sufficient to meet the necessary losses, which shall be levied by the Board of Directors of the Association in accordance with this policy contract. (c) For the General Fund, the Insured agrees to pay quarterly in the months of January, April, July and October of each year, an amount to be determined by the Board of Directors not to exceed one-tenth of one per cent of the amount of this policy."

"If any payment or quarterly call which shall be due and owing from the insured to the association under this policy, is not paid during the month for which the same is made and within which it is due and payable, then and in every such case the same shall, without any action whatsoever on the part of the Association, at once terminate any and all liability of the Association to the insured or to the beneficiary under the policy."

It will be noted that a payment any day in the month of July would have been within the letter of the contract and not in any period of grace allowed by statute. If such grace period is to be allowed at all upon such contract, it certainly began on August 1st and not on July 1st, as contended by appellant. The statute provides that insurance policies shall provide "for a grace of at least one month for the payment of every premium after the first * * * during which month the insurance shall continue in force." If "grace begins when the letter of the contract ends," then there is no question that the death of the in-

sured, occurring on August 14th, was within the period of grace, allowed by law. Article 4732, R.C.S., subd. 2.

 We have in mind also, in this connection, the principle of insurance law that when an ambiguous phrase occurs in an insurance policy, or one subject to two constructions, the one most favorable to the insured should be adopted by the court. And that forfeitures are not favored by the law. 32 Corpus Juris, 1152; 14 R.C.L., 926; 24 Tex.Jur. 702–705.

Appellees forcefully present the proposition that the insured in this case was entitled to an accumulated reserve of some $55 or more, which, under subdivision 7 of article 4732, R.C.S., should have been applied by the insurer for extended insurance, and which, if so applied, would have extended such insurance beyond the time of death—regardless of any period of grace. We pretermit any extended discussion of this matter with the statement that if the insurer in this case is subject to the provisions of article 4732 at all, it would be also subject to this provision as well as the one-month grace period provided for in subdivision 2 of said article.

Finding no reversible error in the judgment of the trial court, we are of the opinion that such judgment should be, and it is, affirmed.