## FOXWORTH–GALBRAITH LUMBER CO. v. REALTY TRUST CO. et al.
### No. 4817.

Court of Civil Appeals of Texas. Amarillo.

Nov. 8, 1937.

Rehearing Denied Dec. 13, 1937.

Sanders & Scott, of Amarillo, and Wm. P. Goar and Goggans & Ritchie, all of Dallas, for Realty Trust Co. and Panhandle Const. Co.

Underwood, Johnson, Dooley & Huff and W. M. Sutton, all of Amarillo, for Foxworth-Galbraith Lumber Co.

STOKES, Justice.

On the 7th of April, 1931, the city commission of the city of Spearman passed an ordinance providing for paving and improving portions of Bernice and Collard streets. The portion of Bernice street to be improved was designated as unit No. 5, and the portion of Collard street to be improved was designated as unit No. 10. Notice of a hearing was issued and published in the local newspaper for more than ten days prior to the 25th of April, 1931, at which time the city commission held a public hearing, at which all property owners and those interested in abutting property on the respective units to be improved were given an opportunity to contest any action of the city commission with reference to the assessments proposed by the ordinance to be levied upon such property to defray a portion of the expenses of such improvement. By ordinance of the 25th of April, 1931, the hearing was closed and assessments levied for part of the costs of the improvements in accordance with the front-foot rule of assessment, and paving certificates in the usual form were ordered issued to Panhandle Construction Company, the successful bidder, with whom a contract had theretofore been executed by the city commission. The certificate covering the assessment against appellant's lots in unit No. 10 on Collard street was for the sum of $1,156.41, and against its lots in unit No. 5, being a portion of Bernice street, in the sum of $804.58. To secure the payment of the certificate on the lots in unit No. 10, an assessment lien was provided in the ordinance and also in the certificate against abutting lots Nos. 4, 5, and 6, in block No. 6, of the town of Spearman, and a like lien created upon lots Nos. 5 and 6, in the same block, to secure the certificate covering unit No. 5 on Bernice street upon which these lots also abutted. The certificates provided for payment in five annual installments, with interest at the rate of 8 per centum per annum, and provided for a reasonable amount in addition as attorney's fees if placed in the hands of an attorney for collection, or if collected by suit. The assessments were made against appellant, Foxworth-Galbraith Lumber Company, the owner of the lots, and the certificates were payable to appellee Panhandle Construction Company, the contractor, who assigned to appellee Realty Trust Company the certificate covering the lots in unit No. 10 located on Collard street.

Collard street runs approximately northeast and southwest, while Bernice street runs directly north and south. These two streets come together at the northeast corner of lot No. 6, which lot takes the form of a triangle, and has a frontage of 181.04 feet on Bernice street and 130.66 feet on Collard street. Lot No. 5 adjoins lot No. 6, and contains a frontage of 50 feet on Collard street. Bernice street takes off a corner of this lot, thus subjecting it to a 30-foot frontage on that street. Lot No. 4 is not affected by Bernice street, but contains a frontage on Collard street of 50 feet.

Appellant did not appear at the hearing, and made no protest of the assessments or the issuing of the certificates; neither did it file any suit in the district court within fifteen days after the hearing was had, or at any other time.

This is a consolidated suit on the two paving certificates wherein each appellee had filed suit on the certificate held by it, and the two causes of action consolidated by order of the trial court.

The trial was before the court without the intervention of a jury, and resulted in a judgment in favor of appellees, respectively, foreclosing their liens on the property, but denying to them personal judgments against appellant, Foxworth-Galbraith Lumber Company, for the amounts of the certificates.

To this judgment appellees excepted and gave notice of appeal, and appellant, being dissatisfied with the judgment rendered by the trial court foreclosing the pavement lien against its property, likewise excepted and gave notice of appeal. All parties perfected their respective appeals, and the case is before this court upon numerous assignments of error filed by all parties.

We shall designate the appellant as the Lumber Company and the appellees as the Realty Trust Company and Construction Company, respectively.

██ The fifth and sixth propositions of the Lumber Company attack the notice that was issued by the governing body of the city

and published in the local newspaper, notifying all interested parties of the date and place of the hearing to be had on the 25th of April, 1931. It claims that the notice is insufficient, and that the trial court erred in rendering any judgment on the certificates because the notice so issued and published was not in substantial compliance with the statute governing such matters, and it was not afforded a reasonable opportunity to appear before the city commission at the hearing. The specific objection to the notice is in reference to the description which it contained of the property proposed to be assessed. The notice designated the improvement to be made upon Collard street as unit or district No. 10, and the improvements on Bernice street as unit or district No. 5. The description of the property included in district No. 10 designates it as being on Collard street from its intersection with the northeast property line of Main street to its intersection with the northeast line of lot No. 18, in block B. The description given of the property included within district No. 5 on Bernice street describes it as being on Bernice street from its intersection with the west line of Bernice street with the northwest line of Davis street to its intersection with the southeast property line of Collard street. The maps and plats shown in the record plainly show these designated points. Any one examining the map or plat of the city would have little difficulty in locating these units. It is claimed that block B is not located by the description in the notice, and without its location it would be impossible to locate the property to be improved, as the lines of the Collard street improvement refer to and depend upon the location of block B. During the progress of the trial it was stipulated that there existed only one block B in the town of Spearman. From the notice it is plainly shown that the property is within the city of Spearman. The notice was published in a local newspaper in that city. The purpose of the notice was to inform those owning property abutting upon the improvements that the hearing was to be had and to give them an opportunity to appear and contest any action with reference thereto which the board may take, and to give an opportunity to appeal from the conclusions of the board and assessments made after the hearing. We think the notice was sufficient for these purposes, and was in substantial compliance with the statute. It has been held by the Supreme Court of the United States that if the service is made by

publication it must be of such character as to create a reasonable presumption that the owner of the property, if present, and taking ordinary care of his property, will receive the information of what is proposed, and when and where he may be heard. Bellingham Bay & B. C. Ry. Co. v. City of New Whatcom, 172 U.S. 314, 19 S.Ct. 205, 43 L.Ed. 460. Measured by these requirements, we do not think it can be presumed that the Lumber Company was not afforded an opportunity and did not receive all necessary information to enable it to be present at the hearing and enter whatever contest and any objections to which it deemed itself entitled under the law. These propositions are overruled.

By its first four propositions and assignments of error, the Lumber Company complains of the assessments against its property upon the front-foot rule or plan by which each front foot of its lots abutting upon each of the streets mentioned was assessed a portion of the expenses of the improvements equal to the portion that was assessed against each other front foot of property abutting thereon within the limits of the unit in which it was included, and asserts that, on account of the odd and irregular shapes of its lots, that method of making the assessments resulted in an unfair, unequal, and discriminatory assessment against its property as compared to the other lots abutting upon such streets. The contention is that, in consequence of such unequal and inequitable assessments, it has been denied the equal protection of the law and deprived of its property without due process of law.

On account of the fact that Collard street runs northeast and southwest, and that Bernice street runs directly north and south, thus forming a junction at the northeast corner of lot No. 6, this lot necessarily takes the form of a triangle and comes to a point at the street intersection. Lot No. 5 adjoins lot No. 6 and is in the form of a rectangle, except that a small portion of its southeast corner is cut off by Bernice street. These odd shapes necessarily reduce the areas of these two lots and the assessment upon the front-foot rule necessarily resulted in a greater amount being placed against each square foot of the area in these lots than is assessed against each square foot of the regular shaped lots.

Under the seventh and eighth propositions, the Lumber Company complains of the assessment being made jointly against

lots Nos. 4, 5, and 6 on Collard street, and lots Nos. 5 and 6 on Bernice street, and asserts that, by reason thereof, these lots are made to bear more than their proportionate share of the costs of the improvements.

There is hardly any doubt that these contentions of the Lumber Company contain substantial merit. The record does not show any particular use to which these lots had been placed which resulted in the benefits of the improvements to these lots being any greater per square foot of area than the benefit derived from the improvements by any other lot or lots abutting thereon. Those lots which were regular in shape contained a greater area as compared to the frontage than the irregular-shaped lots contained, and it would seem that, in the absence of a showing to the contrary, a lot of smaller area than another lot would necessarily merit a smaller assessment, although its frontage upon the improvement may be the same or greater.

█ It was to take care of just such situations as this that our statute, article 1105b, § 9, Vernon's Ann.Civ.St., was enacted. That section of the article provides that no assessment shall be made against abutting property or the owner until after notice and an opportunity for a hearing has been provided, and no assessment shall be made against any abutting property or the owners thereof in excess of the special benefits accruing to such property in the enhanced value thereof by means of such improvements as determined at such hearing. It has always been recognized by the courts that legislative bodies and the governing bodies of municipal corporations, under the taxing power, possessed authority and power to levy special assessments against abutting property for the improvement of streets and highways. The power to do so has, however, at all times been based upon the benefits accruing to the property so assessed. The theory is that, where the value of property is enhanced to an amount equal to the assessment made against it, no confiscation results and the owner is not damaged. Before the enactment of modern statutes providing for hearings before designated tribunals, great difficulty was encountered in drawing the line between the value of the property before the assessments were made and its value after they were made, and thus determining the amount of the benefits as compared to the burdens cast

upon the property. Hutcheson v. Storrie, 92 Tex. 685, 51 S.W. 848, 45 L.R.A. 289, 71 Am.St.Rep. 884; Roundtree v. City of Galveston, 42 Tex. 612; Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443.

Before the enactment of statutes providing for hearings to be held by governing bodies of cities at which owners of abutting property upon proposed improvements of streets were given an opportunity to be heard and to contest proposed assessments against their property, such governing bodies were left to their own judgments in regard to such matters, and were faced with the difficult task of establishing the amounts of such assessments without the aid or assistance of the property owners. If the assessments were in excess of the benefits derived by the abutting property, they could be defeated by subsequent suits in court, and in such suits the courts usually held that assessments in excess of accruing benefits amounted to confiscation and deprived the owners of their property without due process of law. This necessarily resulted in great confusion and formed the basis for much litigation. Assessment certificates issued against such property were necessarily of questionable value, as it could not be known until determination of such litigation whether they were valid or not. Generally speaking, statutes providing for such hearings have been held to be constitutional and valid. Seymour v. Security Trust Co. (Tex.Civ.App.) 55 S.W.2d 853; Vogel v. Central Texas Securities Corp. (Tex.Civ.App.) 62 S.W.2d 243, 246; Lewis v. Lindsley et al. (Tex.Civ.App.) 68 S.W.2d 548.

█ The statute, article 1105b, § 9, provides that any one owning or claiming any property assessed who shall desire to contest the assessment or the amount thereof, or any inaccuracy, irregularity, invalidity, or insufficiency of the proceedings or contract with reference thereto, or with reference to such improvements, or on account of any matter or thing not in the discretion of the governing body, shall not only have the right to appear at the hearing before the governing body of the city, but also to appeal therefrom and institute suit for that purpose in any court having jurisdiction within fifteen days from the time of the assessment and levy. Failure to institute such suit within the time specified constitutes a waiver of

every matter of which advantage might have been taken at such hearing and the property owner is barred or estopped from in any manner contesting or questioning such assessment and the amount, accuracy, validity, regularity, and sufficiency thereof, and of the proceedings and contract with reference thereto, and with reference to such improvements.

The enactment of these provisions of the statute cleared away the confusion that formerly existed and gave substance and stability to the paving certificates issued, assessments made, and liens created against property abutting on such improvements, and it has consistently been held by the courts of this state and other jurisdictions, including the Supreme Court of the United States, that these provisions of the statute are reasonable, valid, and binding. In the case of Vogel v. Central Texas Securities Corporation, supra, it is said: "The law is settled that one who fails to institute legal proceedings to question the amount of assessments or benefits under the general paving laws within the time fixed thereby is barred from questioning the amount of the assessments made or benefits received. West Texas Const. Co. v. Whitefield (Tex.Civ.App.) 53 S.W. 2d 832; Shambaugh v. Bellar (Tex.Civ. App.) 54 S.W.2d 550; Seymour v. Security Trust Co. (Tex.Civ.App.) 55 S.W.2d 853; Fisher v. L. E. Whitham & Co., 120 Tex. 516, 39 S.W.2d 869, 79 A.L.R. 1095; Scanlan v. Gulf Bitulithic Co. (Tex. Civ.App.) 27 S.W.2d 877."

This holding and expressions of like character are contained in so many opinions of the courts of this and other states, and the law is so well settled in accordance with the principle enunciated in the above quotation, that further comment or citation of authority are deemed unnecessary.

The question then arises as to the scope and extent of the hearing of the governing body. The record in this case shows that at the time of the hearing the entire three lots did not exceed in value the sum of $200, and that the pavement and improvements made on the streets in front of them did not increase their value more than $150. The assessments levied against them by the city commission for such improvements aggregated $1960.99. The Lumber Company takes the position that the governing authorities of the city did not have power or authority to levy an assessment against its property

for the cost of improving the streets in an amount greater than the enhancement in value which accrued to its property by virtue of the improvement, and that to levy an assessment substantially in excess of that amount would be, in effect, a taking of its property without due process of law and without just compensation, which is inhibited by both the State and Federal Constitutions (Const.Tex. art. 1, §§ 17, 19; Const.U.S. Amend. 14). With this abstract proposition of law we are in hearty accord. The courts have so held in many cases. If these matters had been presented to the governing body of the city at the time the hearing was held, and the facts had shown the wide disparity in the value of the property and the benefits derived by it from the improvement as compared to the amount assessed against it, and the governing body had, regardless of such showing, made the assessment, and if the Lumber Company had complied with the statute and filed its suit in the district court to correct the error, and the district court had likewise disregarded such disparity and appellant had then appealed the case to this court and brought it here under the provisions of the law relative to such matters, this court could not have done otherwise than correct the errors and held with appellant Lumber Company upon its contention. But this is not that kind of a case. Appellant did not avail itself of the right which it had thus to establish its contention. It did not file a suit to contest the paving assessment, and the statute provides that when it failed to do so it waived every matter of which it might have taken advantage at such hearing. If we should admit that conditions on April 25, 1931, when the assessment was made, were such as the evidence in this case shows, we still would be without authority to give appellant any relief for the reason that it did not approach this court in the manner provided by law. We cannot assume that the governing authorities of the city would not have given appellant relief if these matters had properly been presented to it at the time. In fact, if the evidence had been the same, we are forced to the assumption that it would. This shows the wisdom of the statutory provisions in reference to such matters, and we are forced to the conclusion that its failure to contest the apportionments of the cost of the street improvements in the statutory manner precludes the Lumber

Company from questioning the irregularity of the proceedings, even though the constitutional question of its property being taken without due process of law and without just compensation is involved.

It cannot be said that the governing authorities of the city, when assembled for the hearing, did not have jurisdiction to hear and determine questions relating to the assessment upon the front-foot rule or plan, nor that they did not have jurisdiction over the questions raised by appellant concerning the irregularity in the shape of its lots abutting on the street improvement, as well as the question of the advisability of making the assessments in solido instead of against each lot separately. The statute is sufficiently comprehensive to cover all these matters, and appellant, not having followed the course that was open to it under the plain provisions of the law, has waived its rights and is estopped to assert them in a proceeding of this nature. West Texas Construction Co. v. Whitefield et al. (Tex. Civ.App.) 53 S.W.2d 832; Copellar v. O. L. Crigler Co. (Tex.Civ.App.) 87 S.W. 2d 326; Mitchell v. City of Terrell (Tex. Civ.App.) 96 S.W.2d 556. The constitutional questions raised by the Lumber Company in regard to these matters, that is, that the assessments as made by the governing body of the city, in view of the wide disparity shown by the evidence in this case which existed between the value of the property before the assessment was made and the benefits derived therefrom by the improvements on the one hand and the amount assessed against it on the other, all depend upon the facts in regard to these identical matters. In other words, if these facts are not true, then it could not be said that the constitutional rights of appellant have been violated. These facts were within the jurisdiction of the city commission at the hearing, and the fact that they involve the constitutional rights of appellant does not change the provisions of the law establishing the jurisdiction of the tribunal and the conditions and circumstances under which such facts must be determined. We cannot assent to the contentions of the Lumber Company in regard to these matters, and its first, second, third, fourth, seventh, and eighth propositions are therefore overruled.

The Realty Trust Company and the Construction Company, by their first and second propositions, assert that when they introduced in evidence the paving certificates containing all of the usual provisions in regard to the improvements and the recital that all prerequisites necessary to establish their validity had been complied with, they made a prima facie case, and that the Lumber Company was entitled to no defense except that which is provided by the statute, viz., that notice of the hearing was not published or did not contain the substance of one or more of the requisites prescribed by law, or that the assessments exceeded the amount of the estimate of the cost of the improvement contained in the published notice. These matters will be discussed in connection with their fourth and fifth assignments in which they assign error of the trial court in declining to render personal judgments in their favor against the Lumber Company, as well as foreclosing the assessment liens. The trial court foreclosed the assessment liens on the Lumber Company's property, but declined to render personal judgment against it. We presume the trial court took the view of the Lumber Company as expressed in its counter propositions and assignments in its brief which in substance is, that article 1105b, Vernon's Ann.Civ.St., and the assessments levied pursuant thereto, violate the due process clauses of the State and Federal Constitutions in so far as they purport to impose personal liability upon the Lumber Company, collectible out of its general property or estate which was not specially benefited by the improvements and after the full value of the property abutting upon the improvements has been applied to pay such assessments. In other words, the contention of the Lumber Company is that, under the law, the governing body of the city had power and authority to levy an assessment upon its property for an amount equal to the benefits which would be conferred upon that particular property, but it did not have the power or authority to create an obligation or burden its property with an amount greater than the benefits which would accrue to it by the proposed improvements of the streets. It contends further in this regard that the effect of that portion of the statute delegating to the governing body of the city power and authority to make such assessments personal obligations of and liabilities against the owners of such abutting property is unconstitutional and void for the reason that the effect of establishing such personal liability is to

subject under execution other property belonging to such owners when such other property has received no benefit whatever from the improvement and the authority to take it under execution upon a personal judgment amounts to the taking of such other property without due process of law and the application of such other property to an assessment for street improvement that did not and could not have resulted in any benefit whatever to such other property.

Speaking in the abstract, these contentions of the Lumber Company unquestionably are well founded in the law. As we have heretofore stated, the whole basis upon which rests the authority of the Legislature to pass a law such as is contained in article 1105b rests upon the principle of benefits accruing to the property abutting upon the improvement, and it was never intended by the Legislature generally to involve in such assessments any property other than that abutting upon the thoroughfares, streets, or highways affected by the improvement. These are matters which concern the governing body in the hearing provided by the statute. It cannot be doubted that if it is shown at such hearing that the effect of making the assessment against abutting property to a street improvement in a certain amount would be to exceed the entire value of the property assessed, including its original value and such enhancement in value as it may enjoy from the benefits derived by the improvement, and the governing authorities should disregard such showing and deliberately levy an assessment against such property in excess not only of its entire value, including the benefits, but for an additional amount as a personal liability against the owner, such assessment would be void and subject to the constitutional inhibitions employed by the Lumber Company in this contention. The theory of the law, however, is that the value of the property, and especially the enhancement in value that will accrue to it by virtue of the imposed improvements, are matters which shall be determined by the governing body at the time of the hearing. It cannot be said that the law in any respect contemplates values that may be enjoyed by abutting property at any time after the hearing is had or depreciations which it may suffer at subsequent times. If it were so, both the validity and stability in value of paving

certificates issued upon such assessments would be subject to the caprice of the real estate market and persistently subjected to fluctuations in values created by economic conditions in the country which are in a state of continual vacillation and uncertainty. It was no doubt with these things in view that the Legislature specifically and unequivocally provided in the statute that such certificates, when issued, should constitute personal liabilities of the owners of the property affected by the improvements. Theoretically, at least, it could never happen that an assessment would be made which would create the condition of which the Lumber Company complains in this case. Governing bodies are forbidden by the constitutional provisions relied upon by the Lumber Company from doing so, and, if they violate their plain duties in this respect, the courts will not hesitate to correct them; but appeals to the courts for such redress must be made in the manner provided by law. If these matters had been presented to the governing body of the city of Spearman when the hearing was held and it had been shown by undisputed testimony, as it was in the trial of this case, that at the time the hearing was held the property did not have a value exceeding $200, and that the proposed improvements would not enhance that value more than $150, that body would have been without authority to place upon it an assessment aggregating $1,960.99. If it had done so, and the matter had been presented to the courts in the manner provided by the law, the assessment would promptly have been declared void for all the reasons insisted upon by the Lumber Company in this case. We cannot say at this late date, however, that, if the Lumber Company had made protest at the hearing and contested the assessment as made, the undisputed evidence would have shown at that time such great disparity between the assessment and the actual value and enhanced value of the property. We cannot know what would have been the result if the matter had been contested at that time. Those interested in making the assessment may have had other evidence that would have overcome the evidence which was introduced in this case, or that may have been introduced by the Lumber Company at the hearing, and the final judgment of the governing body which resulted in the assessment may have been supported by sufficient evidence.

Likewise, if the matter had been presented to the courts at the time and in the manner provided by law, the same results may have followed. If they had, then, for the time being, there would have been no margin of personal liability against the owner of the property. What conditions may subsequently arise in regard to the value of or benefits to the property, the city commission could not know. Within a short time after the assessments were made, the property may be of much less value or its value may have increased, and likewise as to the benefits derived by it from the improvement of the streets. These matters depend upon fluctuations of markets and the trends assumed by varying popularity of local business and residential sections and materially affect the subsequent value and stability of improvement certificates such as those involved in this case. It was for the purpose of buttressing such securities against such conditions that the law made provision for personal liability of property owners in addition to liens upon the property affected by such assessments, and not with the view, as assumed by the Lumber Company, of placing a burden upon property of such owners that is not affected or benefited by the improvement by allowing it to be taken under executions upon personal judgments nor of allowing governing bodies of cities to levy assessments materially in excess of benefits derived by abutting property from improvements that may be made upon the streets.

The ingenious suggestion is made by the Lumber Company that the Legislature has no constitutional authority to delegate to a local governing body power to make an assessment and create a personal liability against a property owner for street improvement that may result in consuming the entire property assessed, and, in addition thereto, subjecting other property of his estate to an execution upon a deficiency judgment when such other property has received no benefit from the improvement. The thought is suggested that it would make no difference whether the occasion which brought about such injustice was subsequent fluctuations in values or any other local or general cause. The basis of the argument is that fluctuations in values of real estate and other property are matters of common knowledge and are well known to lawmakers and judicially known to the courts. If, there-

fore, the Legislature be permitted to enact such a law, the effect would be to permit the enactment of a statute which it knew may have such a result, and thus to destroy the familiar constitutional inhibitions against the appropriation of private property for public use without just compensation as well as the due process clauses.

Under a superficial consideration of this contention, it would appear that, when the entire property abutting upon the improvement, including all the benefits which have accrued to it by virtue of the improvement, has been foreclosed, levied upon, and sold, and still there remains a portion of the cost of the improvement that must be collected out of other property of the lot owner, and such other property is levied upon and sold to satisfy the unpaid portion of such cost, that property has been taken from him for a public use, viz., the improvement of the streets, without any compensation whatever. Such would appear to be a violation of the constitutional provisions mentioned. But that is not the effect nor meaning of the statute. The provision for personal liability on the certificates is, as we have said, for the purpose of buttressing such securities against future fluctuations in the value of the property securing them. The benefits accruing to the property by virtue of the improvements are in esse, and their value is established, on the day of the hearing. If there are no benefits, there cannot be any assessment. If there are benefits, they accrue immediately to the owner of the property. Just how long he may hold them depends upon the fluctuations in the value of the property and upon other local conditions. Their variations may cause him to lose the benefits entirely, but that does not mean he has not received them. Indeed, it has nothing to do with what he received on the day the hearing was had. The hearing and final judgment of the governing body established the fact that he did receive the benefits and the provision for his personal liability upon the certificates is designed to guard against their loss by adverse conditions that subsequently may arise.

The attacks made by the Lumber Company upon the provisions of the statutes delegating to local authorities power to make assessments against abutting property and its claim that their provisions violate its rights under the Constitution of

this state and the United States, and its assertion that its constitutional rights are violated by the provisions of the law which provide for personal liability of the owners of such property on the ground that their effect is to subject other property of the estate of such owners, are not well taken. By failing to appear at the hearing on the 25th of April, 1931, and failing to file in the district court a suit to set aside the assessments as provided by article 1105b of the Revised Statutes of this state (Vernon's Ann.Civ.St.), the Lumber Company waived any rights it may have had to contest any of the matters presented in this case and is now estopped, as provided by the statute, from contesting them in a proceeding of this nature.

The law pertaining to personal liability of the owner being valid, the learned trial judge was in error in declining to render personal judgment against the Lumber Company upon the trial.

What we have said disposes of all of the assignments of error and propositions presented by all of the appellants and appellees, and, for the errors pointed out, the judgment of the trial court denying personal liability against the Lumber Company will be reversed, and judgment here rendered that the Realty Trust Company and the Construction Company, in addition to foreclosing their assessment liens against the property involved, shall also be decreed personal judgments against the appellant Lumber Company for the amounts represented by the improvement certificates sued upon, together with interest and costs of the trial court and of this court.

In all other respects the judgment of the trial court will be affirmed.