**CITY OF HOUSTON et al., Appellants,**

v.

**L. D. PARKINSON et al., Appellees.**

No. 14861.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 27, 1967.

Rehearing Denied Oct. 12, 1967.

Second Motion for Rehearing Denied
Nov. 2, 1967.

Wm. A. Olson, City Atty., and Homer T. Bouldin, Trial Supervisor, Houston.

Edgar W. Monteith, Charles E. Williams and Peter S. Solito, Houston, and William P. Dobbins, San Antonio, amicus curiae in support of motion for rehearing.

Danny R. Edwards and Joel B. McCarty, Jr., Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a judgment enjoining the levying of any assessment against the property owners on Alba, Fisher, Donovan and Brinkman Streets in Houston for the paving of said streets, and cancelling any assessments that had been made, and holding void the ordinance making the assessments. The judgment was based on jury findings that the only notice given of the hearing on the proposed assessments was by publication in the Houston

Press; that all those owning property on said streets were not given the right to be heard at the hearing date of February 20, 1963 on any matter pertaining to the proposed improvements and assessments; that the curbs and gutters were not constructed in accordance with the specifications set forth in the pertinent ordinance; and, that the action of the City Council in passing the ordinance levying the assessments was arbitrary and capricious.

The action was brought as a class action under Rule 42(a) by five named plaintiffs, the named parties suing individually and as representatives of the other property owners on their respective streets. The named plaintiffs were: L. D. Parkinson of Fisher Street, Mr. and Mrs. A. H. Williams of Donovan Street; Richard Bruhn of Brinkman Street; and H. R. Henderson of Alba Street. Judgment was in their favor individually and as representatives of all the property owners of their particular class similarly situated.

The defendants were the City of Houston and its then Mayor.

Appellant urges the action could not have been maintained as a class action. It was purportedly brought under Rule 42(a) but under which subdivision is not stated. We are of the view it could be maintained under Subdivision (3) as a spurious class action. The character of the right sought to be enforced for the class was several; there was a common question of law and fact affecting the several rights and common relief was sought. 1 McDonald, Texas Civil Practice, Sec. 3.34.1, pages 347–351. We also find adequate representation for the respective classes.

On December 26, 1962, the City Council passed an ordinance, No. 62–1859, determining the necessity for and ordering the pavement of certain streets, including the above named ones. The ordinance was ordered published, as required by Article 1105b, Vernon's Ann.Civ.St.Tex. The ordinance gave notice that a hearing would be held on February 20, 1963, at 11:00 o'clock a. m. in the Council Chambers, following which hearing assessments would be levied against the abutting property owners in accordance with the benefits in the enhanced value of each tract or property. This ordinance was properly published by publication in the Houston Press. No attack is made on the form of publication. The complaint is that this was the only notice furnished the owners of the property and such is not constitutionally sufficient to authorize the Council to levy an assessment.

We should notice that the record shows there were listed in the ordinance three groups of streets. Only Groups I and II are here involved.

Group I provided for construction of curbs and gutters and 7-inch cement stabilized shell base and hotmix asphaltic concrete surfacing. Under Group I are listed Fisher, Alba and Brinkman Streets. Alba is shown to be 37 feet in width. Brinkman is shown to be 24 feet in width. Fisher from the EPL of Golf Drive to 365 feet east of the EPL of Golf is shown to be 37 feet in width, and from that termination point to a point 442 feet east of the EPL of Brinkman, Fisher is shown to be 24 feet in width.

Group II includes a designated portion of Donovan Street and in addition to providing for the same improvements as called for in Group I calls for construction of sidewalks.

Further, there appears in the published ordinance the estimate of the rate of assessment to be made. For Group I the estimate for surfacing a width of 24 feet was at the rate of $5.58 per front foot, and for a 37 foot width it was $7.39. This, as we understand it, includes the estimated cost of the paving and curb and gutter. The estimate for Donovan Street that constituted Group II was $9.59 per front foot. This included sidewalks. Donovan Street was shown to be 37 feet in width.

On April 17, 1963, Council passed Ordinance No. 63–529, which formally closed the hearing, determined the benefits and levied the assessments.

In paragraph (f) it was recited that at said benefit hearing "all parties desiring to be heard * * * were heard and all matters as to the accuracy, sufficiency, regularity and validity of any and all of said proceedings were heard and considered; and the said City Council heard evidence as to special benefits to each parcel of abutting property and the respective owners thereof in enhanced value of said property by means of such improvements of the respective portion of the particular street or street on which the same abuts, and did give a full and fair hearing to all parties appearing and desiring to be heard; and did at such hearing determine the benefits as aforesaid."

Paragraph (g) of the ordinance recited in substance that assessment on a uniform amount per front foot would not be equitable because of difference in the width of the streets, and because there are curbs and gutters to be constructed at some places and not at others. Further it is recited that adjustments in the assessments had been made because of the differences in the improvement is and that no assessment was more than the amount of the benefits in the enhanced value resulting to each tract of land and the owner thereof from the improvements.

Section 2 of the ordinance again recites the hearing of evidence, testimony and protest for and against the improvements and when there were no further protests offered or desired to be offered, the hearing was closed. The objections and protests were overruled and denied. Regularity of all proceedings is recited and direction is made for the issuance of certificates reciting such regularity and a lien securing the amount assessed is fixed.

The real complaints of appellees as evidenced by their petition and evidence offered on trial of the case are that the only notice given was by publication in the Houston Press; that all property owners were not given an opportunity to be heard at the hearing pertaining to the proposed improvements and assessments; that the curbs and gutters were not constructed in accordance with plans and specifications and that the action of the City Council in passing the ordinance levying the assessment was arbitrary and capricious.

The position of appellant is that the trial court was in error in submitting any of the four issues to the jury, the contention being that trial should not be de novo but should be under the substantial evidence rule. Also, it is contended that whether the action of the City Council was arbitrary, it allegedly, not being supported by substantial evidence, is a question of law to be decided by the court.

■ The first special issue, inquiring if the newspaper advertisement was the only notice of hearing given by the City, should not have been submitted because the evidence is undisputed that this was the only notice given. Only ultimate issues, the existence of which are in dispute under the evidence, are to be submitted. This is no reversible error because we find it established as a matter of law.

■■ Appellees seem to take the position that constructive notice alone does not satisfy due process of law and therefore all proceedings are without effect. They cite cases that are discussed by the Texas Supreme Court in City of Houston v. Fore, Tex., 412 S.W.2d 35. We will not discuss or analyze them because that Court has done so. We understand the rule to be that constructive notice alone does not satisfy due process where it is practicable to give some form of personal notice. The witnesses testifying had lived at their respective addresses many years and as to them it may be assumed it was practicable to get personal notice to them. There is no evidence, however, along this line as

to the other owners. However, we also understand the rule to be that though only constructive notice was given in conformity to the statute, due process is satisfied if the parties complaining had actual notice. City of Houston v. Fore, supra; City of Corsicana v. Mills, 235 S.W. 220 (Tex.Civ.App.), ref.; McAlexander v. Smith Bros., 62 S.W. 2d 530 (Tex.Civ.App.), writ dism.; Beatty v. Panhandle Construction Co., 275 S.W. 716 (Tex.Civ.App.), writ ref.

█ Under the record here it appears that all named plaintiffs, except Mr. Bruhn, had actual notice and appeared at the hearing on February 20. In addition to the named plaintiffs, except Mr. Bruhn, Audrey Turner, Mrs. Burnet Moers, H. O. Capps, Mrs. L. P. Ward, C. W. Spaulding, Virgil Parsons, all of whom lived on Fisher Street, testified in the trial court that they had actual notice of the hearing and attended it. Mrs. Garcia and Robert J. Page, who lived on Alba Street, had actual notice. Mr. Page attended the hearing, but Mrs. Garcia did not due to the illness of her husband. Mrs. A. H. Williams and W. L. Foreman, Sr., who lived on Donovan Street, had actual notice. In each instance we have stated the parties had actual notice we mean they acquired it by means other than personal notice furnished by the City. Some learned of it from neighbors; some by seeing a survey being made; and one learned of it through his wife who read the published notice.

The evidence at the trial showed that a petition protesting the proposed improvements was signed by most of the property owners. All but one of the owners on Donovan Street signed such petition that was presented to City Council at the hearing. Those signing the petition obviously had actual notice. Too, another such petition that was presented to the Council was signed by 78% of the owners on Fisher, Brinkman and Alba Streets. Obviously these signers had actual notice. We are not informed as to which of the owners did not sign and do not know whether they had actual notice or not. If they did not, they would not have been accorded due process of law. However, those who signed the petition and those who testified at the trial that they were at the hearing were accorded due process insofar as notice was concerned. Those who had no actual notice may of course defend on such ground in any suit brought to enforce any assessments.

Appellant also contends the court erred in submitting Special Issue No. 2 inquiring as to whether *all* owning abutting property were given the right at the hearing to be heard on any matter pertaining to the proposed improvements and assessments. Its position is that in this appeal from the action of the City Council trial is not de novo but is under the substantial evidence rule and whether there was substantial evidence supporting Council's action is a law question. It asserts there was no evidence that a hearing of meaning was not given and the ordinance recited the giving of a hearing to all interested parties as required by law.

Appellees' position is that a hearing given to *all* abutting property owners is a prerequisite to the validity of any assessment and a hearing was not given to *all* such owners.

Unquestionably parties desiring to be heard, on making known their desire, are legally entitled to be heard. They are entitled to be heard, as provided by Article 1105b, Section 9, on the question of the benefits conferred, the amount of the proposed assessment and the accuracy, regularity, sufficiency and validity of the proceedings in connection with the proposed improvements. The same section provides for appeal to contest the amount of the assessment or any inaccuracy, irregularity, invalidity or insufficiency of the proceedings with reference to the improvements or "on account of any matter or thing not within the discretion of the governing body".

■ Section 3 of said Article provides that the governing body of a city shall have the power to determine the necessity for the improvements. This determination is a matter within the discretion of the governing body. While Section 9 seems not to allow judicial review of the exercise of a matter within Council's discretion, an expression in the case of City of Houston v. Blackbird, Tex.Civ.App., 394 S.W.2d 159, indicates such might be subject to judicial review. We are of the view that it would, but such review in this respect would be limited to a determination that Council's action was wholly arbitrary and capricious or fraudulent because the improvements were clearly private in nature and not public or could not conceivably confer any benefit on the abutting property.

The city ordinances determining the necessity of making the improvements, giving a statement of estimated cost, providing for published notice, and giving the proposed assessments based on benefits determined by Council, all appeared in evidence at trial, or at least their material contents were read in evidence. Too, the ordinance closing the hearing, finding benefits and levying the assessments that were recited not to exceed the enhanced value of the property caused by the benefits conferred, was in evidence.

■ We are of the view that any attack on the ordinances made in the trial court would be under the substantial evidence rule and not de novo. City of Houston v. Blackbird, supra. Whether all property owners desiring to be heard were given an opportunity to present their views is an evidentiary matter for the judge to consider in determining whether the action of Council was arbitrary and capricious. There was, therefore, error in submitting this issue to the jury.

There was error in submitting to the jury whether the action in passing the ordinance levying the assessment was arbitrary and capricious. This is a law question to be decided by the court.

■ It was error for the trial court, on a basis of the evidence in this case, to render judgment voiding all assessments that had been made and enjoining the levying of any that had not been made because under the evidence before us it cannot be said the action of Council was arbitrary and capricious, and there is no contention that it was fraudulent.

We have read the entire statement of facts. We will not detail all of the testimony of each of the eleven witnesses who testified at the trial concerning what occurred at the hearing before City Council on February 20, 1963. Apart from the contention of appellees that we have notice above concerning the insufficiency of notice, the real complaint of appellees seems to have been that they were not allowed a hearing contemplated by law, that is *all* owners were not allowed to be heard. Some who were heard, they contend, were given too brief a hearing, so their views on all material matters were not heard.

The testimony given on trial by the witnesses concerning what occurred at the hearing on February 20 varies. It was variously estimated that there were from 25 to 60 property owners present at the hearing. A list of property owners is attached to appellees' petition and 80 names appear on the list. However, it seems clear to us that all of those present did not intend to personally make their presentation of protest. To the contrary, with the exception of the persons we shall subsequently mention, they had signed a petition of protest which they intended to be presented to Council through their chosen representatives. The evidence shows that such petitions were presented to and received by Council. While the petitions are not in evidence, all witnesses testifying at the trial to the contents stated they were a protest against making any of the improvements because they were not needed. These witnesses stated the streets were already blacktopped. Too, they stated they had no drainage problems because there were good

drainage ditches. The witnesses also testified the petitions pretty well expressed their views on the matter of the proposed improvements. It is very significant, we think, that there is no word in the record stating specifically that the petitions stated no benefits would be conferred by the improvements nor that the proposed assessments would exceed any enhanced value resulting to the abutting property. Neither is there any testimony on trial specifically asserting the want of benefits nor attacking the amount of the assessments. There was in the petitions, and there was on trial, the general conclusion that the property owners signing the petition and testifying on trial were opposed to the improvements because the streets were blacktopped; there was no drainage problem; there were curbs and gutters at some places, and they didn't need the improvements.

Council having received the petitions, it must be presumed, particularly in view of the recitals in the ordinances, that it gave consideration to the owners' views but disagreed with them.

The evidence on trial with regard to the time the meeting began, how long it lasted, and whether when there was a recess at noon it was announced it would resume in the afternoon, is very indefinite. It does seem that the meeting was held on a day during the Fat Stock Show and about noon Council recessed to attend some function in connection with the Show. Uncertainty is probably due to the fact that the witnesses arrived at the meeting at different times, sat at different positions in the Council chamber, and could not all hear well. Further, some were not listening too closely as they saw their representatives presenting their petitions and speaking to them before Council.

Mrs. Moers testified the meeting began at 11:30 and it lasted about eight minutes. She did not ask to be heard. She would have spoken if she had been asked. She heard no one who asked to be heard denied the right. Mr. David Capps was one rep-resentative who spoke for them. Council announced the hearing would continue at 2. She went home.

Mr. H. O. Capps got there about 11:45 and people were speaking against improvements. Adjournment was about 12 noon. He did not make known his desire to speak. He made no attempt to speak. 35 or 40 people were present. Council made an announcement about a later meeting. He went home. He heard two persons speak. He wanted only to appear through petition.

Mrs. A. H. Williams arrived about 9. The meeting opened about 11:30. She made known her desire to speak and spoke about five minutes. The meeting lasted 15 or 20 minutes. Council announced a later meeting, but didn't indicate it would be that afternoon. She knew of no one who raised a hand expressing a desire to speak who was not allowed to do so.

Audrey Turner said the hearing started at 11 o'clock and lasted until noon. Council did not ask her if she wanted to talk. She did not speak. The petition signed by her and presented by Mr. Capps presented pretty well her views.

W. L. Foreman presented the petition of the people on Donovan Street. He spoke about three minutes. The meeting lasted until 12:10. Council said they would reconvene in the afternoon. He did not stay for it.

C. W. Spaulding, when the meeting recessed, made known his desire to speak. He went back to the afternoon session. Some other parties, when the morning session adjourned, said they wanted to be heard. He didn't remember who they were. Council announced there would be an afternoon session. He was there but didn't ask to be heard. The petition pretty well set out his views.

Mr. Page said Council met a couple of hours and said the hearing would be postponed to later date. Inconsistently, he said he returned for the afternoon meeting.

Mr. Parsons raised his hand, indicating that he wanted to speak. He heard others speak. He wanted to speak but was not asked to. He signed the petition. He helped get it up. He never asked anyone to let him speak. The people were not told when the morning session adjourned that the meeting would reconvene.

L. D. Parkinson presented one of the petitions and spoke about three minutes. We are just unable to understand from Mr. Parkinson's testimony whether there was an afternoon session or whether his other appearances were all on other days.

Mrs. Ward said Council, at the conclusion of the morning hearing, announced it would reconvene but she was in the rear of the room and didn't hear the time stated. Their representatives spoke.

We think the effect of all this is that those present were not denied the requisite hearing.

■ There was evidence from two or three witnesses that much of the curb did not conform to specifications. We need only note that if such is correct, it would not void the whole assessment. No evidence complains of the street, sidewalk or gutter improvement as not being up to specifications.

There is also testimony of a general nature that there is now more traffic on the streets and some "hotrodders" use it. This, as it appears in the record, is not sufficient to bring it within City of Houston v. Blackbird, supra. It is one item of evidence that could be considered on the question of benefits and enhanced value.

Too, there is some evidence of variance in the per front foot assessments. However, about the only complaint that this is not proper is the testimony that the houses were all about the same. Council, in its ordinances, recognized a uniform assessment on a front foot basis would not be equitable. There are many factors to be considered. Some of them are: shape and depth of lot, width of pavement, whether there were sidewalks and curb and gutters. The evidence in the record here is not of significance. See Foxworth-Galbraith Lumber Co., v. Realty Trust, et al., 110 S.W.2d 1164 (Tex.Civ.App.), dism.

Reversed and remanded.

COLEMAN, J., not sitting.

On Motions for Rehearing

BELL, Chief Justice.

We adhere to our original judgment reversing and remanding this case for new trial. We, however, grant appellants' motion for rehearing to the extent that we held the action to be maintainable as a spurious class action under Rule 42(a)(3), Texas Rules of Civil Procedure.

■ We are of the view that the special statute, Article 1105b, Section 9, giving the right of appeal to a person who desires to complain of the action by City Council is controlling. It provides in substance that anyone desiring to contest the proceedings and the resulting assessment shall have the right to appeal by instituting a suit in any court having jurisdiction, such suit to be instituted within fifteen days from the time an assessment is levied. This is not a mere statute of limitation, but is a statute conferring a right to appeal. Any individual desiring to take advantage of the statutory method of appeal must comply with its terms. Each person complaining must individually make himself a party to a suit instituted by himself and other individuals as plaintiffs, or he may file a separate suit or intervene so as to in effect become a party-plaintiff so long as his action is taken within the period prescribed. Whichever method he chooses he is individually exercising the right to appeal given by the statute. When purporting to appeal under the statute, he must make himself a party to the suit in his individual capacity.

The result in this case is that the named parties-plaintiff, that is, L. D. Parkinson, Mr. and Mrs. A. H. Williams, Richard Bruhn and H. R. Henderson, individually, were the only parties-plaintiff to the appeal from Council action.

We express no opinion as to the rights of other parties should they desire to defend against enforcement of the assessment against them, but note City of Houston v. Fore, cited in our original opinion.

Appellants' motion for rehearing is granted to the extent that we hold the appeal provided by the statute may not be maintained as a class action. Our judgment reversing the case as to the named plaintiffs will remain undisturbed.

Appellees' motion for rehearing is also overruled.

COLEMAN, J., sitting on rehearing.