# NATIONAL LIFE COMPANY v. J. H. McKELVEY, JR., ET AL.

No. 7037.   Decided February 16, 1938.
(113 S. W., 2d Series, 160.)

*E. C. Corry,* of Des Moines, Iowa, and *Thompson & Barwise* and *Seth Barwise,* of Fort Worth, for plaintiff in error.

Since the uncontradicted evidence showed that the defendant is a foreign assessment life insurance company it is error for the court to hold that it had to comply with the provisions of Article 4732, R. S. 1925, which provided for a grace period of thirty-one days in life insurance contracts, and for a statutory penalty of 12 per cent. and reasonable attorneys' fees. Haydel v. Mutual Reserve Fund Life Assn., 98 Fed. 201; Logan v. Texas Mut. Life Ins. Assn., 121 Texas 603; 51 S. W. (2d) 288; National Mutual Ben. Assn. v. Aaron, 67 S. W. (2d) 855.

*M. Hendricks Brown, Marvin H. Brown, Jr.,* and *Marvin B. Shannon,* all of Fort Worth, for defendant in error.

Under a counter proposition cited National Life Assn. v. Parsons, 170 S. W. 1038; First Texas Prudential Ins. Co. v. Sorley, 272 S. W. 346; Trinity Portland Cement Co. v. Lion Bonding & Sur. Co., 229 S. W. 483.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court defendants in error J. H. McKelvey, Jr., and others, as beneficiaries under a life insurance policy issued by National Life Association, predecessor of plaintiff in error, recovered for $2,000.00, the face value of the policy, plus penalties and attorneys' fees, totalling $640.00, and the judgment was affirmed by the Court of Civil Appeals. 88 S. W. (2d) 1061.

The policy was issued September 20, 1912, by National Life Association, incorporated under the laws of the State of Iowa as an assessment life insurance company and having a permit to do business in this State. The association continued the business of issuing policies of life insurance on the assessment plan in this State until sometime during the month of February, 1929, when its corporate name was legally changed to The National Life Company of Des Moines, Iowa, after which time it issued no more policies on the assessment plan, but issued them only on a legal reserve basis. The new corporation continued on an assessment basis the business of the old association written prior to the change in corporate name, conducting its affairs in reference to the policies written on the assessment plan in the same manner that it would have done

had no change been made in its charter and name. The business of the old company was kept separate from the new business done upon the legal reserve plan. The insured, John H. McKelvey, now deceased, paid his assessments quarterly under a provision of the policy reading as follows:

"The stipulated payments and quarterly calls required under this contract and which the Insured hereby agrees to pay to the Association in order to continue and keep said contract in force, are as follows: (a) For the Reserve Fund the sum of fifty cents for each year of the Insured's age, as stated herein, for each one thousand dollars of insurance carried, any unpaid portion of which is a lien on amount due under this policy until paid. (b) For the Benefit Fund the Insured agrees to pay quarterly, in the month of January, April, July and October of each year, an amount sufficient to meet the necessary losses, which shall be levied by the Board of Directors of the Association in accordance with this policy contract. (c) For the General Fund, the Insured agrees to pay quarterly in the months of January, April, July and October of each year, an amount to be determined by the Board of Directors not to exceed one-tenth of one per cent of the amount of this policy.

"  *    *    *

"If any payment or quarterly call which shall be due and owing from the insured to the association under this policy, is not paid during the month for which the same is made and within which it is due and payable, then and in every such case the same shall, without any action whatsoever on the part of the Association, at once terminate any and all liability of the association to the insured or to the beneficiary under the policy."

The deceased paid all of the quarterly assessments up to and including the April, 1932, assessment, which was paid on April 12, 1932. He did not pay the July, 1932, assessment, and died on August 14, 1932.

1   Only two questions need be discussed. It is provided in Article 4732, R. C. S., that no policy of life insurance shall be issued or delivered in this State unless the same shall contain certain provisions therein set out. Among these provisions is one to the effect that a period of grace of at least one month for the payment of all premiums after the first shall be allowed. The contention of the plaintiff in error is that the association, having been licensed to do business in this State on the assessment plan and having issued the policy in suit at a time when it was doing business only on that plan, is not subject to the provisions of Article 4732.

In the cases of National Life Insurance Co. v. Hagelstein, 156 S. W. 353 (error refused), and National Life Association v. Parsons, 170 S. W. 1038 (error dismissed), the same company presented the same contention with reference to the same form of policy and in each of these cases the contention was overruled and it was held that this company was subject to the provisions of the chapter in which that article appears. That should foreclose the question. But it is contended that these decisions were overruled by this Court in the case of Logan v. Texas Mutual Life Ins. Association, 121 Texas 603, 51 S. W. (2d) 288, 53 S. W. (2d) 299. The opinion of this Court in the Logan case did not mention or refer to the prior decisions in the former two cases, although they were relied upon by the attorneys as authority therein. This Court did not overrule the Hagelstein and Parsons cases by the Logan decision. We therefore hold that the question under consideration was foreclosed against plaintiff in error by the action of this Court in refusing a writ of error in the Hagelstein case.

It is claimed that the insured died after the expiration of the period of grace. As above pointed out, his death occurred on August 14, 1932. The grace period began at the time the letter of the contract ended. If these quarterly payments were due on the 1st days of January, April, July and October, then the contention of plaintiff in error would be well taken; but the obligation, as pointed out above, was to pay "in the months of January, April, July and October." Other language in the policy quoted above employs the expression, "during the month for which the same is made and within which it is due and payable."

2  It is stated in 48 C. J. 592, that "where a debt is payable within a specified term, payment is not due until the last day of the term." This, it would seem, must necessarily be the rule. The insured obligated himself to pay in July. He was not in default until the expiration of that month. It cannot be said that he obligated himself to pay on July 1st. A payment on July 31st would be a literal compliance with the letter of the contract, and the period of grace attached thereafter. The insured having died within less than 30 days after the due date of the assessment, the statutory provision for a period of grace operates to prevent a forfeiture of his policy.

3, 4  Another provision which Article 4732 requires that policies contain is one to the effect that all premiums shall be payable in advance. That requirement applies to the policy in suit the same as does the one with reference to a period of grace. If

the record contained any evidence that the quarterly periods began on the first days of January, April, July and October, then the statute would operate to make the first days of those months the respective due dates of the quarterly premium payments; but there is no evidence or data in the record from which that fact is made to appear. The trial judge had nothing to aid him in determining when the quarterly periods began. The policy was issued on September 20th and it is not disclosed what period of time was covered by the initial cash payment. With nothing before him but the language of the policy above quoted, the trial judge did not err in concluding that the due dates of the premium payments were the last days of the named months respectively. The facts were probably not fully developed with reference to this point, but we are not authorized to reverse an errorless judgment in order to afford an opportunity for fuller development.

Our holdings on the questions discussed render it unnecessary to write on any other questions presented.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court February 16, 1938.