CITY OF HOUSTON, Petitioner,

v.

Roy BLACKBIRD et al., Respondents.

No. A–10563.

Supreme Court of Texas.

July 14, 1965.

Rehearing Denied Oct. 6, 1965.

John Wildenthal, Jr., City Atty., Houston, W. Lawrence Cook, Jr., Asst. City Atty., for petitioner.

Presley E. Werlein, Jr., Houston (Jack K. Leeka, Houston, of counsel), for respondents.

CALVERT, Chief Justice.

This is a suit in the nature of an appeal instituted by abutting property owners to contest the amount of assessments levied against their property for costs of paving improvements. Following a jury trial, the court rendered judgment voiding the assessments. The Court of Civil Appeals affirmed. 384 S.W.2d 929. We affirm.

The first question for decision is whether abutting property owners who sue under Sec. 9 of Article 1105b [1] to contest assessments levied against their property for costs of paving improvements are entitled to a trial de novo of issues relating to benefits accruing from the improvements. We hold they are not.

By ordinance of February 25, 1959, the Houston City Council determined a necessity for and ordered the permanent improvement of Woodway Drive between West Broad Oaks Drive and South Post Oak Lane. Respondents each own tracts of land abutting on the north side of Woodway Drive between Sage Road and West Broad Oaks Drive. Woodway Drive was a two-lane paved road without curbs and

1. Unless otherwise indicated, all references to statutes are to Vernon's Texas Civil Statutes.

gutters. The improvements contemplated by the City Council in passing the ordinance called for construction of two twenty-four foot roadways separated by a twelve foot esplanade, together with curbs and gutters incidental to such improvements. Following notice and a hearing as required by Article 1105b, the City Council passed Ordinance 59–510. This ordinance established estimated benefits to the property of respondents at $6.00 per front foot, levied assessments against the respondents and their property at that rate, closed the hearing and denied all objections to and protests against the assessments. Respondents then instituted their suit in the district court within the time prescribed by Article 1105b.

Respondents alleged in their petition that neither they nor their property would receive any special benefits from the construction of the proposed improvements; that the City Council arbitrarily determined that plaintiffs would receive special benefits therefrom; and that construction of the improvements would reduce the value of their property. They prayed for judgment setting aside the assessments and declaring the paving certificates issued or to be issued thereunder null and void.

The case was tried to a jury. Respondents adduced evidence in support of their allegations, introduced Ordinance 59–510 into evidence, and rested their case. The City offered no evidence. In response to separate special issues directed at each individual respondent's property, the jury found (1) that the work contemplated by the ordinance did not result in special benefits to the respective respondent's property in the amount of $6.00 per front foot, and (2) that the action of the City Council in passing the ordinance levying assessments against the property of each plaintiff was arbitrary and capricious.

Article 1105b authorizes incorporated cities, towns and villages to determine the necessity for and to order the improvement of highways within their corporate boundaries, and to provide for the payment of the improvements by the city or partly by the city and partly by assessments against abutting property and its owners. If part of the cost is to be paid through assessments against abutting property and its owners, a comprehensive procedure is provided by the statute for determining the amount of the assessments to be levied. A preliminary estimate of the total cost of the improvements must be made, and the assessments against abutting property and owners may not exceed the estimated cost of curbs, gutters and sidewalks and nine-tenths of the cost of other improvements. Costs of the improvements must be apportioned among the parcels of abutting property and their owners in accordance with the "Front Foot Plan or Rule" unless, in the opinion of the governing body, application of the rule would result in injustice or inequality, in which event the costs may be assessed in such proportion as is deemed just and equitable "so as to produce a substantial equality of benefits received and burdens imposed."

The provisions of Sec. 9 of Art. 1105b are crucial to our inquiry. Those which are relevant read as follows:

"No assessment * * * shall be made against any abutting property or its owners, * * * until after notice and opportunity for hearing as herein provided, and *no assessment shall be made against any abutting property or owners thereof in excess of the special benefits of such property, and its owners in the enhanced value thereof by means of such improvements as determined at such hearing.* * * * Such hearing shall be by and before the governing body of such city and *all owning any such abutting property,* * * * shall have the right, at such hearing,* to be heard on any matter as to which hearing is a constitutional prerequisite to the validity of any assessment authorized by this Act, and *to contest the amounts of the proposed assessments,* the lien and liability thereof, *the special benefits to the abutting prop-*

erty and owners thereof by means of the improvements for which assessments are to be levied, the accuracy, sufficiency, regularity and validity of the proceedings and contract in connection with such improvements and proposed assessments, and the governing body shall have power to correct any errors, inaccuracies, irregularities, and invalidities, and to supply any deficiencies, and to determine the amounts of assessments and all other matters necessary, and by ordinance to close such hearing and levy such assessment * * *.

"Anyone owning * * * any property assessed, * * * who shall desire to contest any such assessment on account of the amount thereof, or any inaccuracy, irregularity, invalidity, or insufficiency of the proceedings or contract with reference thereto, or with reference to such improvements, or on account of any matter or thing not in the discretion of the governing body, shall have the right to appeal therefrom and from such hearing by instituting suit for that purpose in any court having jurisdiction, within fifteen (15) days from the time such assessment is levied, * * *."[2]

■ From the emphasized language in the foregoing statutory provisions it will be noted that the only limitation therein on the amount of assessments which may be made by the governing body of a city against abutting property and its owners is that the assessments shall not exceed "the special benefits of such property, * * * as determined at such hearing." It will be noted also that authority is expressly conferred on owners to contest at the hearing both "the amounts of the proposed assessments" and "the special benefits to the abutting property and owners thereof"; but that on appeal, whereas authority is expressly given to contest assessments "on account of the amount thereof," no authority is expressly given to contest the determination of the amount of special benefits. The failure of the Legislature to provide expressly that abutting property owners should have a right on appeal to contest the amount of special benefits as determined by the governing body of a city is both glaring and significant, particularly since the special benefits thus determined establish a ceiling for assessments. The Legislature must have intended that a finding of special benefits to abutting property and a determination of the amount thereof should be entrusted to the discretion and judgment of the governing body of a city, else these matters would have been made subject to contest on appeal. We hasten to state, however, that this does not mean that such findings and determinations cannot be reviewed in a judicial proceeding.

■ An assessment against property and its owner for paving improvements on any basis other than for benefits conferred and in an amount materially greater than the benefits conferred, violates Sec. 17 of Article 1 of the Constitution of Texas, Vernon's Ann.St. which prohibits the taking of private property for public use without just compensation. Hutcheson v. Storrie, 92 Tex. 685, 51 S.W. 848, 45 L.R.A. 289 (1899). The right to judicial review of acts of legislative and administrative bodies affecting constitutional or property rights is axiomatic. See Brazosport Sav. & L. Ass'n v. American Sav. & L. Ass'n, 161 Tex. 543, 342 S.W.2d 747 (1961); City of Amarillo v. Hancock, 150 Tex. 231, 239 S.W.2d 788 (1951); Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 12 A.L.R. 1116 (1920). The City of Houston does not question the verity or soundness of this proposition. What the City does question is the right of respondents in this case to a full-blown de novo trial of the question of benefits. We agree with the City that respondents had no such right; and, accordingly, we agree with the City that respondents were not en-

2. Emphasis ours throughout unless otherwise indicated.

titled to a jury trial of the issues in this case and that the jury's answers to the special issues submitted to them should have been disregarded.

■ In finding that certain property would be benefitted by the paving improvements and in determining the amount of the benefits, the City Council of the City of Houston was performing acts which are only quasi judicial. Moreover, as heretofore pointed out, it was performing those acts in the exercise of powers entrusted entirely to its discretion and judgment by the Legislature. The statute not only fails to provide expressly that such acts may be the basis of an appeal to the courts, but expressly limits judicial review of undesignated grounds of contest to "any matter or thing not in the discretion of the governing body." Having thus precluded judicial review of such acts to the extent of its constitutional power, there is no basis for holding that the Legislature intended to accord dissatisfied property owners a de novo review thereof. We hold, therefore, that the acts of a governing body of a city in finding benefits to property and in determining the amount of the benefits under Art. 1105b may, when performed in accordance with the statute, be set aside and annulled only because they are arbitrary or are the result of fraud. Accord: Keller v. City of Corpus Christi, Tex.Civ.App., 253 S.W.2d 1009 (1952), writ refused, no reversible error. See Lewis v. City of Ft. Worth, 126 Tex. 458, 89 S.W.2d 975, 978 (1936).

■ Our holding is not in conflict with Wright v. City of Dallas, Tex.Civ.App., 64 S.W.2d 799 (1933), writ refused; on former appeal, City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973 (1931). As pointed out in Keller, assessments involved in that case were made under Art. 1219, a statute which does not preclude a contest in court of the finding of benefits and the amount thereof. Neither does our holding render meaningless the provision for contest of the amount of assessments in court. The amount of assessments may still be contested if they exceed the benefits as determined at the hearing, or exceed the estimated cost of curbs, gutters and sidewalks plus 90% of the estimated cost of other improvements, or if they are based on benefit determinations which are arbitrary or are the result of fraud.

We are not to be understood as holding that the Legislature is without constitutional power to require a full de novo trial of the question of benefits to abutting property and its owners from paving improvements made under Art. 1105b. The Legislature has made no such requirement, and that question is not before us. For the same reason, prior decisions of this Court upholding legislative requirements for de novo trials of quasi judicial questions referred in the first instance to administrative agencies are not controlling. For such cases, see Key Western Life Ins. Co. v. State Board of Insurance, 163 Tex. 11, 350 S.W.2d 839 (1961), and Scott v. Texas State Board of Medical Examiners, Tex.Sup., 384 S.W.2d 686 (1964).

■ There is no suggestion in this case that the City Council of the City of Houston acted fraudulently in finding that respondents and their properties would be benefitted by the paving improvements or in determining that they would be benefitted in an amount of six dollars a front foot. The claim is only that the Council acted arbitrarily in making those findings and determinations. Whether the Council acted arbitrarily with respect to such matters is a question of law, not a question of fact. In this respect the rule is the same as that applied in judicial review of decisions of administrative agencies which are not subject to de novo trial. See Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420 (1946). The second question to be decided, then, is whether the evidence in the record before us establishes that the action of the City Council was arbitrary in determining that respondents' property was benefitted to the extent of six dollars a front foot. In deciding the question, we begin with the presumption that the ordi-

nance levying the assessments is valid, and we weigh the evidence with the basic understanding that discretionary acts of governing bodies of cities should not be lightly overturned.

The evidence in the record discloses, generally, that use of respondents' property is restricted to single family residences; that before the improvements were ordered, Woodway Drive was a two-lane, asphalt street, with a twenty-four hour traffic count in August of 1956 of 1,906 vehicles; that the paving improvements were intended to convert the street into a major thoroughfare and that they have accomplished that purpose; that the two-way traffic count was 5,918 vehicles on April 19, 1960 and was 13,106 vehicles on February 7, 1962, but that an undetermined number of vehicles in the latter count did not traverse the section of the thoroughfare on which respondents' property abuts; that the homes of respondents are valued in a price range of from $35,000 to $60,000.

Each of the respondent owners testified on the trial, in person or by stipulation, and each testified that his or her property had not been benefitted by the improvements, but that, to the contrary, the value of the property had been decreased or diminished. Estimates of diminished value ranged from 25% to 50%. Diminished value was attributed to the noise and danger stemming from the heavy increase in traffic which made the property less desirable for residential use, particularly for people with children.

One of the respondents had paid $61,500 for his property in 1958, had made improvements in the residence which enhanced its value by some $10,000, and had sold it shortly before the trial in November, 1963, for $61,000 after having it on the market for more than two years. Another bought his property in 1952 because it was on a quiet street. His property had been for sale for several months preceding the trial with only one "ridiculously low" offer.

A real estate broker who operates in the area answered, "There is no question about it," when asked if respondents' property had decreased in value. He estimated that values had depreciated up to 25%, and testified there had been no benefits to the property. He testified further that he had attempted to sell property on Woodway Drive since the paving, but that nine out of ten prospective purchasers he had taken to look at the property would not get out of the car because of the traffic.

As heretofore noted, the City offered no evidence in support of the reasonableness of the City Council's finding and determination that respondents and their property had benefitted from the improvements to the extent and in an amount of six dollars per front foot. The ordinance making the determination and levying the assessment was introduced in evidence, without limitation, by respondents. It contains a quotation of some of the testimony of a real estate broker at the hearing before the City Council. He testified at that hearing that in his opinion the property of respondents was benefitted in enhanced value in an amount of eight dollars a front foot. Not all of respondents were present or represented by counsel at the hearing. The witness was not cross-examined with respect to this testimony. Why it was included in the ordinance is not shown. Even if the testimony may be considered in evaluating the reasonableness of the Council's findings, a matter we need not decide, we give it but little probative force under the circumstances and conclude that it adds little, if anything, to the presumption in favor of the validity of the ordinance.

On the record before us we conclude that the finding by the City Council that respondents' property was benefitted to the extent and in the amount of six dollars a front foot was clearly arbitrary. In reaching that conclusion we are not unmindful that the reasonableness of the determination must be judged as of the time it was made, and that much of the testimony to which we have referred relates to times

and events subsequent thereto; but the heavy increase in traffic with its attendant noise and danger was a readily foreseeable and predictable fact, and proof that this *has* happened to respondents' property is the best evidence available of what the City Council should have known *would* happen when it made its findings. Assessments based on an arbitrary determination of benefits cannot be permitted to stand.

The judgment of the Court of Civil Appeals is affirmed.

## ON MOTION FOR REHEARING

City of Houston has filed a motion for rehearing in which it asks that the cause be remanded to the trial court for retrial. The basis for the request is that the case was tried on an erroneous legal theory and that City should be permitted to offer evidence that the finding of the City Council was not arbitrary or unreasonable. In support of its request, City of Houston cites City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 223, 73 A.L.R.2d 640 (1958), in which case, having concluded that the trial court's judgment was erroneous and should be reversed, we remanded the cause for retrial to afford the respondent an opportunity to develop its evidence. On the record before us in that case, our normal procedure would have required rendition of judgment against the respondent; but having reversed the trial court's judgment, we were authorized by Rule 505, Texas Rules of Civil Procedure, to remand instead. Therein lies the difference between that case and this.

In this case the trial court rendered and entered a correct judgment on the record before it. It is well settled that an errorless judgment of a trial court cannot be reversed in the interest of justice or to permit the losing party to have another trial. See Davis v. Davis, 141 Tex. 613, 175 S.W. 2d 226 (1943); National Life Co. v. McKelvey, 131 Tex. 81, 113 S.W.2d 160 (1938); Texas Employers' Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982 (1936).

The motion for rehearing is overruled.