

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

March 1, 1973

*Distinguished*
*m-1609*

Honorable David Finney
Chairman, State Affairs Committee
House of Representatives
Austin, Texas    78711

Opinion No. II-15

RE: Questions concerning
constitutionality of
portions of H. B. No. 1,
a Bill regulating the
activities of certain
State officers and State
employees, etc.

Dear Representative Finney:

At the direction of the State Affairs Committee of the House
of Representatives you have furnished us with a copy of Committee
Amendment No. 1 to H. B. 1, often referred to as "The Ethics Bill",
with the request that we examine its provisions, generally, for
constitutional questions and, particularly, with reference to
several specific questions you have asked.

The Bill declares it to be the policy of this State that no
legislator, elected or appointed state officer, or state employee
"shall have any interest, financial or otherwise, direct or indirect,
or engage in any business transaction or professional activity or
incur any obligation of any nature, which is in substantial conflict
with the proper discharge of his duties to the public interest," and
is designed to implement that policy.  Its purpose is "to strengthen
the faith and confidence of the people of Texas in their state gov-
ernment" by assuring that public business is being honestly and
ethically conducted, a legitimate reason for the exercise of the
police power.

Legislative efforts in that direction, however, must comport
with the State and Federal Constitutions.  To be valid, a law such
as this must not violate the separation of powers principle; it
must be reasonable and fair in its application in order to satisfy
due process, privacy and equal protection rights; its penal provi-
sions must not be vague; and it must not otherwise conflict with

constitutional provisions.

A separate right of privacy has recently been given formal recognition in Texas, described as the right to be free from (1) unwarranted appropriation or exploitation of one's personality, (2) the publicizing of one's private affairs with which the public has no legitimate concern, or (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Billings v. Atkinson, 16 Tex.Sup.Ct.Jour 181, Jan. 27, 1973. Also see Roe v. Wade, ___ U.S. ___ , 93 S.Ct. 705 (1973), the Abortion decision. A California ethics law requiring financial disclosure was invalidated by the Supreme Court of that State because it infringed too greatly upon such rights. City of Carmel-by-the-Sea v. Young, 466 P.2d 225 (Cal., 1970).

It is our opinion that the public does have a legitimate interest in the current financial condition and recent financial history of those of its servants who are in positions of authority where the temptation to improperly exercise public discretion for private gain may coincide with the opportunity to do so, and that public inquiries may be searching in their scope so long as they are reasonably related to a purpose such as this bill implements. See Stein v. Howlett, 289 N.E.2d 409 (Ill., 1972); Cf. New York Times Co. v. Sullivan, 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964).

On January 6, 1972, this office issued Opinion M-1039 declaring House Bill 203 (Acts 1971, 62nd Leg., ch. 962, pp. 2906-12), amending Article 6252-9, V.T.C.S., (and similar in some respects to the bill considered here) to be unconstitutional. At that time, the Stein case, supra, had not been decided. On the privacy issue, the opinion relied principally on the 1970 decision of the California Supreme Court in City of Carmel-by-the-Sea v. Young, supra. In the light of the Stein case, we now believe the Carmel-by-the-Sea opinion overbalanced the scales in favor of private rights, and that a different shift in the balance will be found by the Texas Supreme Court and the United States Supreme Court when such questions reach them. If certain corrections are made, it is our opinion that the Bill could meet all the constitutional tests and, if enacted, be held valid.

I.  Separation of Powers Generally

The separation of governmental powers found in Article 2,

Sec. 1 of the Constitution of Texas is designed to protect freedom and to prevent excesses. It was not intended to make effective action impossible, and a constitutional problem arises only when one branch of the government interferes with the functioning of another branch in a field constitutionally committed to it. State Board of Insurance v. Betts, 308 S.W.2d 846 (Tex. 1958).

In determining whether an exercise of power by one branch is an unauthorized invasion of the jurisdiction of another, the constitutional relationship of the various departments must be considered. The authority of the State Legislature is plenary, limited only by express or implied restrictions contained in or necessarily arising from the Constitution itself. Government Services Insurance Underwriters v. Jones, 368 S.W.2d 560 (Tex. 1963). The exercise of governmental authority over the system established for the administration of public affairs throughout the state is a legislative matter [Perkins v. State, 367 S.W.2d 140 (Tex. 1963)], as is the declaration of public policy.

The proposed act would apply alike to employees and officers of the state, with certain exceptions mentioned hereafter. It has three separate spheres of operation: (1) it requires financial disclosures; (2) it establishes directory standards of conduct and creates The State Ethics Commission to investigate reported deviations from those standards; and (3) it defines certain types of conduct as crimes subject to criminal penalties. We do not think the proposed act would unconstitutionally burden the executive or judicial departments in its general application.

In setting standards with which all persons entrusted with public responsibility must comply, the Legislature does not encroach upon the constitutional prerogatives of the other branches of the government; it acts in their aid, as well as its own, to promote public confidence in the integrity of all branches of the government.

So long as the Legislature does not interfere with the discharge by the other branches of their constitutional duties, no constitutional problem results. State Board of Insurance v. Betts, supra. Requiring ethical deportment uniformly required of all other public servants can be no unwarranted burden. Nor can requiring disclosure of relevant financial matters be condemned out of hand. And, it has always been a legislative function to define crimes and set punishments.

The Bill does not purport to vary the constitutional quali-
fication for any office or position or to provide for the removal
of officers or employees who fail to meet its standards, though
a failure to comply may have other serious consequences.  In the
abstract, it creates no impediment to the proper functioning of
any department of government; it does not on its face and, so far
as we can see, will not in its operation, violate the separation
of powers clause.

## II.  Application to Judges

The Bill does not, in our opinion, conflict with Article 5,
Section 1-a of the Constitution which creates the Judicial Quali-
fications Commission.  Primarily, that Section establishes a re-
tirement system for judges, and provides for censure, involuntary
retirement or removal from office for certain types of wilful or
persistent conduct, or for disability.  It does not define any
conduct as criminal.  Nor does it provide any punishment.

The Constitutional Section contains no provision for disclo-
sure of relevant information to the public.  To the contrary, papers
filed with the Judicial Qualifications Commission and its proceed-
ings are required to be held in confidence.  Section 1-a of Article
5 of the Constitution cannot be understood as withdrawing from the
Legislature all power to regulate the conduct of judges.  If that
were the case, penal laws applying to the conduct of judicial offi-
cers would be void as to them (for example, see Articles 159, 160,
184, 185, 196, and 197, Vernon's Texas Penal Code); and the Section
would  violate the Equal Protection provision of the Federal Con-
stitution, inasmuch as it would insulate judges from the criminal
sanctions to which other similarly situated persons are subject,
and would seriously impair the system of checks and balances as
applied to the limitation of judicial power.  Cf. Kuechler v. Wright,
40 Tex. 600 (1874); Ferguson v. Maddox, 263 S.W. 888 (Tex. 1924).

Subsection (13) of Section 1-a of Article 5 expressly provides
that the Section shall not be exclusive in its operation.  Bryant
v. State, 457 S.W.2d 72 (Tex.Civ.App., Eastland, 1970, writ ref.
n.r.e.).

Parenthetically, we note that Section 2(2)(B) of the Bill,
if read literally, would make its provisions applicable to elected
judges but not to judges appointed to elective positions, as, for
example, to fill an unexpired term.  This might pose a "classifica-
tion" problem if left unaltered.

Honorable David Finney, page 5 (H-15)

It is our opinion that no conflict exists and that the Legislature may make the provisions of the Bill applicable to Judges.

III. The Disclosure Provisions

The disclosure provisions of Section 4 of the Bill have "classification" problems which, if left uncorrected, would also affect its constitutionality, we believe.

The Texas Supreme Court has reiterated the strong presumption that the Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based on adequate grounds. It is not the function of the Courts to judge the wisdom of a legislative enactment. The necessity or reasonableness of particular regulations imposed under the police power is a matter addressed to the legislative department whose determination in the exercise of a sound discretion is conclusive upon the Courts. Legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold. Texas State Board of Barber Examiners v. Beaumont Barber College, Inc., 454 S.W.2d 729 (Tex. 1970). However, legislative impositions may sometimes constitute improper exercises of police power and, when they do, they will be declared unconstitutional. Lone Star Gas Co. v. Kelly, 165 S.W.2d 446 (Tex., 1942).

To be valid, a classification should be reasonable for the purpose of the legislation, should be based upon proper and justifiable distinctions (considering the purpose of the law), should not be clearly arbitrary, should not be a subterfuge to shield one class and unduly burden another, and should not be a cover to oppress a class unlawfully in its administration. Bjorgo v. Bjorgo, 402 S.W.2d 143 (Tex. 1966); Buchanan v. State, 480 S.W.2d 207 (Tex. Crim. 1972); McDonald v. Board of Election Commissioners of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

Faced with a "classification" problem in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), The Supreme Court of the United States, in a unanimous opinion by Chief Justice Burger, said:

> "In applying that clause [the Equal Protection Clause], this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways . . . . The Equal

p. 67

Protection Clause of that amendment does,
however, deny to States the power to legis-
late that different treatment be accorded to
persons placed by a statute into different
classes on the basis of criteria wholly un-
related to the objective of that statute. A
classification must be reasonable not arbitrary,
and must rest upon some ground of difference
having a fair and substantial relation to the
object of the legislation, so that all persons
similarly circumstanced shall be treated alike.'
Royster Guano Co. v. Virginia, 253, U.S. 412,
415, 64 L.Ed. 989, 990, 40 S.Ct. 560 (1920).
. . ." (404 U.S. at 75-6).

Aside from State officers, the classes recognized by the pro-
posed Bill in its disclosure provisions are (1) employees earning
state salaries of $15,000.00 or more, and (2) those earning less
than that amount. The former must disclose; the latter need not.
The declared purpose of the legislation is to further a policy
that no state officer or employee engage in any transaction or
incur any obligation in substantial conflict with the proper dis-
charge of his duties in the public interest. Certainly there is
reason for assuming that state employees commanding salaries above
some certain high level will be engaged in the discharge of im-
portant duties in the public interest and ought to be subject
to public examination, but it cannot be said with the same certainty
that those receiving a salary below that figure have a lesser degree
of public responsibility which does not require surveillance. When
the State commands disclosure by some, but not all, and makes a
crime of the failure to disclose, its lines of demarcation must
meet Fourteenth Amendment tests. Further, its invasions of pri-
vacy must not go so far as to leave unbalanced the individual and
public rights.

A classification of those required to disclose, based solely
on salary level, is unreasonable for the purpose of the legislation
proposed. We believe the Supreme Court of Texas would overturn
invasions of the right to privacy if the selection of those whose
privacy is to be invaded is not based upon the relation of their
function and authority vis a vis the proper discharge of public
business and the exercise of governmental power. While this does
not mean the Legislature must become submerged in details, these
general principals and guidelines must form the basis for the
classification. The classification may be broad but it must not

be arbitrarily selective on a basis unrelated to the achievement of its purpose, and it must not be so vague as to leave its applicability to persons, or to groups of persons, in substantial doubt.

The classification of "disclosable" interests can also involve Fourteenth Amendment considerations. Section 5 requires disclosure of some classes of property but not of others. Those discriminations are easier to justify in Fourteenth Amendment terms than the salary distinction in the classification of regulated persons. All persons required to disclose must disclose information determined by the Legislature to be important for the public to know. The choice of reportable information belongs to the Legislature and will not be questioned by the courts so long as it is not patently arbitrary or capricious. That the Bill may offer opportunities for the deception of the public by those who would appear to be open and frank while legally concealing important interests is a matter for legislative, not judicial, correction. A weak or easily evaded act may nevertheless be constitutional.

Upon a different matter, classification of interests in property to require the disclosure of property "held" during a certain period, in our view, is no more violative of constitutional rights than the compelled disclosure of property "acquired" or "sold" during that period. Each may have relevance to the likelihood of a person being influenced in his official decisions by considerations of private economic advantage to himself or his privies. As observed in the Stein case, supra, who is to say what will prove relevant and what will not?

IV.  The Criminal Aspects of Section 6

The proposed Bill may not be altogether free from constitutional objection in the prohibitory aspects of Section 6. Subsections (a), (b), (c), (d) and (e) may need attention. A statute must not expose a potential act or to risk or detriment without giving fair warning of the nature of the proscribed conduct. A required course of conduct must not be stated in terms that present a substantial risk of miscalculation by those whose acts are to be regulated. Texas Liquor Control Board v. Attic Club, 457 S.W.2d 41 (Tex., 1970).

Except as modified by Art. 7, V.T.P.C., the rule is that penal provisions must be strictly construed. Strict construction of the provisions of Section 6 could result in some of them being declared invalid or inoperative.

Also, though the "salary" mechanism is not used, Section 6 of the Bill, adopting the definitions of Section 2, has its own acute "classification of persons" problem because it does not apply alike to all State employees. We doubt that anyone can legitimately be exempted from acting with integrity when others must do so or face criminal punishment.

V. The Section 7 Standards of Conduct

Section 7 of the Bill concerns standards of conduct prescribed for all state officers and state employees covered by the Act. As written, the provisions of the Section are only directory. No sanctions are imposed if they are violated. They are intended to furnish a salutory guide for official conduct and to furnish criteria which may be used for disciplinary purposes. However, a deviation from one or more of the standards is not a deviation from binding law, unless some other provision of law makes it so.

VI. The State Ethics Commission

The Bill calls for the creation of the State Ethics Commission, the twelve members of which are to be appointed by various state officers. The appointive power is usually attached to the executive department, [Walker v. Baker, 196 S.W.2d 324 (Tex. 1946)], but Article 4, Section 12 of the Constitution of Texas provides that vacancies in State offices, except legislative offices, will be filled by the Governor unless otherwise provided by law. Clearly, the Legislature is constitutionally authorized to "otherwise" properly attach such power and, if it does, no unconstitutional encroachment results. A judicial office is not involved, (see Article 5, Section 2, Constitution of Texas) nor is the discharge of any constitutional duty impaired thereby. Cf. State ex rel Peden v. Valentine, 198 S.W. 1006 (Tex.Civ.App., Ft. Worth, 1917, writ ref.); In re House Bill No. 537, 256 S.W. 573 (Tex. 1923). In our opinion, the Commission as contemplated is a "Board" within the meaning of Article 16, Section 30a of the Texas Constitution permitting staggered six years term.

Some of the powers given the Commission call for close examination. The power to issue advisory opinions [Section 10(c)] may conflict with the power invested in the Attorney General by Article 4, Section 22 of the Constitution. A similar provision was ruled invalid in Stein v. Howlett, 289 N.E.2d 409 (Ill. 1972).

Section 11 of the Bill gives the Commission the power to subpoena witnesses and the production of pertinent books, accounts,

records and documents. Subsection (d) of Section 11 commands district courts, at the application of the Commission and without notice or hearing, to issue a judicial summons to a recalcitrant witness to appear and give whatever evidence is required by the Commission. If the witness still fails to give the evidence demanded, the Court is required to examine him and punish him for contempt if the Court finds that he did refuse without reasonable cause or legal excuse to be examined, or answer relevant questions, or produce pertinent records or documents. The procedure could violate the due process clauses of the Texas and Federal Constitutions by making the reluctant witness hazard the deprivation of his liberty without an opportunity to first obtain a judicial declaration of his rights.

In the same vein, the absence of provision for judicial review has constitutional connotations. While the Commission has no power to exact civil or criminal penalties, or even to prefer charges, its fact-finding and reporting functions enable it to destroy reputations. Article 1 Section 13 of the Texas Constitution guarantees that ". . . every person, for an injury done him in his . . . reputation, shall have remedy by due course of law." The Supreme Court of Texas recognizes an inherent right of appeal from administrative action where constitutional or property rights are affected. Houston v. Blackbird, 394 S.W.2d 159 (Tex. 1965); Board of Firemen's Relief and Retirement Fund Trustees of Texarkana v. Hamilton, 386 S.W.2d 754 (Tex. 1965). Review may very well be available anyway, but the Bill does not assure it.

VII.  Penalties

Section 18 apparently relates to the "confidential" part of Section 6(a) as well as Section 17. As a result, Section 18 and Section 19(b) assess different punishments for the same indiscretion, though Section 18 has a wider application. Convictions under neither Section 18 nor Section 20 require a criminal intent. Under Section 18 disclosures to persons honestly believed authorized to receive the information will still earn the penalty. Under Section 20(a) the falsity of an allegation is reason enough for punishment, under its terms, no matter what be the bona fides of the public concern which prompted it. To that extent, Section 20(a) constitutes a forbidden abridgment of the First Amendment to the Constitution of the United States, and cannot stand. New York Times Co. v. Sullivan, 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964).

Moreover, the remainder of Subsection (a) of Section 20 conflicts in its punishment provision with the Penal Ccode. See Articles 1269,

1270, and 1275, subdivision 5, V.T.P.C.

Subsection (b) of Section 20 subjects complainants to civil penalties even when their allegations are true, if they are shown to have acted with mala fides.  Short of a security danger or the impairment of the discharge of constitutional duties, we do not believe the First Amendment will permit any governmental repression, direct or indirect, of truthful political information offered by private citizens, no matter what motivates its revelation.  Also see Article 1 Section 8, Texas Constitution.

## VIII.  Injunction

The provisions of Section 21 permitting private citizens to initiate injunction or mandamus proceedings to enforce the proposed Act do not purport to deprive elected officers of any constitutional authority, and interpreted in that light, we believe the provision to be valid.  Spence v. Fenchler, 180 S.W. 597 (Tex. 1915); Scott v. Board of Adjustment, 405 S.W.2d 55 (Tex. 1966).

## IX.  Severability

We think the three spheres of the Bill's operation (disclosure; standards and Ethics Commission; crimes and punishments) while concerning only one subject, are so distinct and independent in nature that any invalidity in one of them need not affect the validity of the others, except insofar as the Ethics Commission is designated the safekeeper of disclosure statements.

## X.  Specific Questions Answered

We believe that the foregoing discussion answers each of your questions.  However, for ease of reference, we restate the questions and our opinion as follows:

Question:  "Does the public disclosure of financial activity and status required by Sections 4 and 5 of H. B. No. 1, violate a constitutionally protected right of privacy or any other constitutionally protected right as to either:

(1) any one or more classes of persons required to file the statement; or

(2) any one or more items or categories of financial interest or activity required to be disclosed and specifically as to

the provisions in Section 5(a)(2), (3) and (5) in that these sections require the disclosure of certain interests that are held, acquired or sold during the reporting period?"

Answer: We answer "yes" as respects the classification of persons, and "no" as respects disclosable interests and activities.

Question: "Does Section 2(2)(d) of H. B. No. 1 conflict with Article 5 Section 1-a(6) of the Texas Constitution by the omission of certain judges?"

Answer: No. Section 2 of the Bill, in defining "State officer" includes elected officers which, in turn, includes, under Section 2(2)(D) judges of certain enumerated state courts, but does not include county and municipal judges, or judges appointed to office, all of whom are listed in subsection (6)A of Section 1-a of Article 5, of the Constitution as being subject to removal for misconduct. There is no conflict because the Bill does not effect removal, but there is a classification problem in impliedly exempting appointees to elective offices from provisions applicable to persons elected to such positions.

Question: "Do Sections 6 and 7 of the H. B. No. 1 conflict with Article 5, Section 1-a(6) of the Texas Constitution wherein the Constitution states that standards of ethics are to be measured by a 'wilful and persistent conduct' standard?"

Answer: No.

Question: "Do the provisions for prohibited acts and the statement of standards in Section 6 and 7 of H. B. No. 1 and the standards stated in Article 5, Sec. 1-a(6)A of the Texas Constitution impose upon judges greater standards and punishments than those applicable to other state officials?"

Answer: No.

Question: "Was the constitutional grant of powers to the Judicial Qualifications [Commission] concerning the ethics of judges [a] grant which can be added to or changed by the Legislature?"

Answer: No. But it concerns only retirement removal and official censure. The Legislature could not add to the constitutional grounds for removal of a judge.

p. 73

Question: "With respect to the judges, does the establishment of a State Ethics Commission and the provisions concerning its powers and procedures conflict with the provisions of Article 5, 1-a, Secs. (2) through (9) and Sec. (11) of the Texas Constitution which creates the Judicial Qualifications Commission and states its powers and procedures?"

Answer: No.

Question: "Does the subjection of judges to the jurisdiction of both the State Ethics Commission and the Judicial Qualifications Commission, without subjecting other officials to both powers, violate the equal protection provisions of the U. S. Constitution?"

Answer: No.

Question: "Does Section 19-b of H. B. No. 1 which imposes felony punishment, when considered with Article 5, Section 1-a(5), (6) and (9) of the Texas Constitution which imposes on judges sanctions and punishment of enforced retirement, censure or removal from office, violate the equal protection provision of the U. S. Constitution?"

Answer: No.

Question: "Does H. B. No. 1 conflict with the grant of powers over judges to the Judicial Qualifications Commission?"

Answer: No.

### SUMMARY

So long as the classification of person and subjects covered is not unreasonable, the Legislature has the power to (1) require by ethics legislation that classes of state officers and employees in places of authority disclose information concerning relevant aspects of their financial life; (2) to provide criminal sanctions for specific unethical conduct (so long as the prohibited conduct is described with sufficient definition); and (3) to establish an Ethics Commission for investigating complaints of unethical conduct on the part of such state officers or employees, for making findings on those complaints, and for supervising the disclosure provisions.

The fact that persons subject to the Ethics legislation may also be subject to other rules of law governing their ethical conduct, does not alone render the proposed legislation unconstitutional.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK
Executive Assistant

DAVID M. KENDALL, Chairman
Opinion Committee