CITY OF ABILENE et al., Appellants,

v.

Bill C. HAYNES et al., Appellees.

No. 11–82–022–CV.

Court of Appeals of Texas, Eastland.

Feb. 3, 1983.

Rehearing Denied Feb. 24, 1983.

Ronald H. Clark, Asst. City Atty., Abilene, for appellants.

Beverly Tarpley, Scarborough, Black, Tarpley & Scarborough, Abilene, for appellees.

McCLOUD, Chief Justice.

This is an appeal of a paving assessment suit by four landowners.[1] Plaintiff landowners urged that the paving assessments levied against them and their property were invalid because they were arbitrary.[2] They further alleged that they were not "abutting" landowners. The trial court ruled that the paving assessments were arbitrary and unenforceable.[3] The City has appealed.

On March 12, 1981, the City Council passed City Ordinance No. 23–1981 assessing each landowner for part of the costs of paving Antilley Road. Prior to the March 12, 1981, ordinance Antilley Road, which is located near the southern edge of Abilene, was a paved two lane roadway approximately 20 to 25 feet wide. On March 12, 1981, the City Council approved the repav-

---

1. The landowners are Bill C. Haynes, David R. Cobb, William G. Hollowell and Jack Reese.

2. The defendants are City of Abilene, The Mayor of Abilene, and the Abilene City Council.

3. This case was tried with a companion case, *Charles T. Johnson et al v. City of Abilene,* Cause No. 14–224–B, which suit has also been appealed and is No. 11–82–021–CV on the docket of this court.

ing of Antilley Road as a 64 foot wide paved street with curbs and gutters. Each landowner was assessed $13.94 per front foot.

The City contends that there was substantial evidence that each of the landowners' properties would be benefitted by the paving project in an amount equal to or greater than the amount assessed against it. See Tex.Rev.Civ.Stat.Ann. art. 1105b, sec. 9 (Vernon Supp.1982–1983).

The Court in *City of Houston v. Blackbird,* 394 S.W.2d 159 (Tex.1965) clearly sets forth certain applicable rules in an appeal of a paving assessment:

(1) there is a presumption that the ordinance levying the assessment is valid;

(2) the acts of a city in finding benefits to property and in determining the amount of the benefits because of paving may be set aside and annulled only because they are arbitrary or the result of fraud;

(3) whether the city acted arbitrarily is a question of law.

The question is whether the evidence admitted at the trial court hearing [4] establishes that the action of the City Council was arbitrary in determining that the landowners property was benefitted to the extent of $13.94 a front foot. The trial court is not limited to considering only the evidence presented at the City Council hearing. All evidence is to be reviewed and not merely that which supports the ordinance. *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (Tex.1946).

The landowners live in either "The Fairways" or the adjoining "Continuation No. 1" of "The Fairways" subdivision. The back of their lots face Antilley Road. There is a six foot fence on their back south boundary line which prevents them from seeing Antilley Road. This six foot fence was a requirement of the City Council for approval of the subdivision. Therefore, the landowners could not have any direct access to Antilley Road from their individual lots because of the fence.

Landowners, Haynes and Cobb, testified that in their opinion the paving and widening of Antilley Road did not benefit their property. A real estate appraiser and a real estate broker also testified that in their opinion the paving did not benefit the landowners' property.

Jimmy Partin III, a real estate appraiser, who testified briefly for the City at the March 12, 1981, City Council meeting, testified at length at the trial. He prepared a written appraisal of each individual property assessed. Partin prepared a "curivilinear analysis," consisting of comparable land sales, which correlated sales from 1972 to the time of trial and from zero dollars per acre to in excess of $16,000 per acre. The curve reflected the increase in property values because of inflation, and also showed how it took "an upswing" after December of 1979, when the Antilley Road paving project was announced. The chart also shows an "upcurving line" after the ordinance was passed on March 12, 1981. Partin testified that the chart reflects that from the time the project was announced to the time the ordinance was passed, the land values "skyrocketed out of sight" along Antilley Road.

Partin also prepared a summary as to each individual property showing the value as of November 30, 1979, the value as of March 12, 1981, the increase in value between November 30 and March 12, the percentage of increase in value, amount assessed, and assessment as percentage of value increase. The chart shows a substantial increase in the value of each of the properties after the announcement of the paving project. Partin's reports and testimony unequivocally reflect his opinion that no assessment exceeded the special benefits to the individual properties and owners because of the paving of Antilley Road. No assessment was greater than the enhanced value of the property resulting from the paving project. Partin stated that it was not even a "close call." He stated, "each

---

**4.** *Railroad Commission v. Shell Oil Co.,* 139 Tex. 66, 161 S.W.2d 1022 (Tex.1942); *Texas Alcoholic Beverage Commission v. Big Country* *Club,* 492 S.W.2d 368 (Tex.Civ.App.—Eastland 1973, writ ref'd n.r.e.).

property would be enhanced by this main artery that would be placed in this portion of town, of Abilene; all eyes would be there." Partin testified that it would be reasonable to assume that the property will continue to rise in value. He testified that the reports provided a basis for making a reasonable estimate that after March 12, 1981, the paving and widening of Antilley Road would increase the value of the property in an amount equal to or greater than the assessments. Partin disputed that any property had decreased in value because of the paving project.

On cross-examination, Partin stated that in his opinion the announcement of the proposed Antilley Road paving project in 1979 was responsible for about fifty percent of the increase in the value of the properties. He agreed that the construction of the Mall of Abilene and the Fairway Oaks subdivision had a bearing on the increased values.

Partin was cross-examined regarding the effect of the six foot wall and the fact that landowners had no direct access from their individual lots to Antilley Road. Partin, however, clearly testified that the wall or nonaccess did not affect his opinion regarding the enhanced value of landowners' properties because of the paving project. It has been held that denial of access to the street improvement does not make the street non-abutting. See *Clements v. City of Corpus Christi,* 471 S.W.2d 83 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). We have found no case which holds that as a matter of law, a city council acts arbitrarily if it finds that abutting property has been enhanced even though the abutting property has no direct access to the improved street. The enhancement issue was not discussed in *Clements.*

■ The burden of proof is upon the landowners to show that their assessments are not reasonably supported by substantial evidence. Preponderance of the evidence is not the test. *Southern Canal Co. v. State Board of Water Engineers,* 159 Tex. 227, 318 S.W.2d 619 (Tex.1958). Judge Reavley in "Substantial Evidence and Insubstantial Review in Texas," 23 SW.L.J. 241 (1969) stated:

A party appealing an administrative decision may have a difficult burden, for "substantial evidence" need not be much evidence. Though "substantial" means more than a mere scintilla or some evidence, it is certainly less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence.

The reviewing court may not substitute its judgment for that of the City Council. The test to be applied is announced in *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (Tex.1946) as:

If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside.

■ After reviewing all the evidence, we hold that the assessments ordered by the City Council were reasonably supported by substantial evidence. The landowners failed to sustain their difficult burden of showing that reasonable minds could not have reached the conclusion reached by the City Council. Whether we would have reached the same conclusion as the City Council is unimportant.

In *City of Houston v. Blackbird,* supra, the court held that the City's action was arbitrary. We point out that the facts in *Blackbird,* are clearly distinguishable. Most notable, the City offered no evidence at trial in support of the reasonableness of the City Council's finding and determination that the property owners and their property had benefitted from the improvements to the extent of the assessment. Also, there was evidence that several thousand cars used the thoroughfare during various twenty-four hour traffic counts. A real estate broker testified that "nine out of ten prospective purchasers he had taken to look at the property would not get out of the car because of the traffic." There was testimony that the value of the properties along the street decreased because of the paving project. None of the evidence in *Blackbird* was contradicted. The record in the instant case is significantly different. While there

is evidence that after the road was paved the traffic increased, there is no evidence as to the number of cars using the road. We note that one of the landowners stated that the road is "not heavily trafficked." Also, Partin testified that no property decreased in value as a result of the paving project.

Landowners introduced a subdivision ordinance of the City of Abilene which imposes a requirement that a subdivision perform certain paving and curbing requirements if a street right-of-way forms a part of the subdivision boundary. These requirements were waived by the City, as authorized by the ordinance, prior to the widening and repaving of Antilley Road. The record concerning the waiving of the paving requirement of a subdivision consists only of the ordinance and a waiving resolution as to "The Fairways." The landowners have failed to establish that the action of the City Council in waiving the paving requirements by the subdivision was arbitrary.

■ Landowners urge, as found by the trial court, that the assessments against them and their properties are void because their properties do not abut Antilley Road. We disagree.

The thrust of landowners' argument is that the 6 foot wall is the south boundary line of their property and since they do not own the land between the wall and the "roadway," their property is not "abutting property." A recorded plat of "The Fairways" prepared in 1978, and of the "Continuation No. 1 of the Fairways" prepared in 1980, clearly shows the dedication of 10 additional feet of right-of-way between landowners' south property line and the north boundary of Antilley Road. John R. Conely, the City Engineer, testified that they determined that the roadway was 80 feet wide along Antilley Road except that the Fairway Oaks Development had dedicated another ten feet in addition to the 80 feet that was originally established as the roadway. The 10 foot dedication along the landowners' south property line is bordered by their property line on one side and by the 80 foot wide public right-of-way established by the County when it paved Antilley Road in 1968. Landowners contend that the dedicated strip is not and never has been used as part of the public roadway. Photographs showing the preliminary grading along the Fairway Oaks wall before the paving project clearly reflect that the 10 foot strip was being used in connection with the roadway. One of the landowners testified that the City had paved within about 5 feet of his south property line.

The trial court found in an additional finding of fact that:

> The property of each Plaintiff abuts on property dedicated to the City of Abilene by Fairway Oaks for public purposes, but does not abut upon the curbing, guttering, or pavement of Antilley Road.

It is stated in 97 ALR2d 1089, sec. 5, that property is "abutting property" so long as it shares a common boundary with the area set aside or dedicated for street purposes and that it is not necessary that the entire width of such area be improved.

All of the evidence indicates that the 10 foot dedicated strip is being used for roadway purposes. It is not necessary that the paved portion of the roadway extend to the landowners' property lines.

*Municipal Investment Corporation v. Triplett*, 371 S.W.2d 124 (Tex.Civ.App.—Amarillo 1963, writ ref'd n.r.e.), cited by landowners, is distinguishable. In that case, the strip of "vacant" land, varying in width from approximately 30 feet to 80 feet, was an abandoned "old highway." The ownership of the strip of land was not established. It had not been maintained or used as a roadway since the construction of the "new highway." The strip of land was not being used as a "public way." The court concluded that the Triplett land did not abut the paving improvement because the Triplett land abutted the vacant strip and the vacant strip abutted the paving improvement. In the instant case, the evidence establishes that the 10 foot dedicated additional right-of-way, which abutts the landowners property, is dedicated to and being used for roadway purposes.

The judgment of the trial court is reversed and judgment is here rendered that the paving assessments listed in the trial

court's judgment against each landowner and his property are valid.

DICKENSON, Justice, dissenting.

I respectfully dissent. It seems to me that these landowners have discharged their burden under *City of Houston v. Blackbird*, 394 S.W.2d 159 at 163 (Tex.1965), by showing that these four paving assessments were arbitrary. The City waived its usual requirement that the original owner of the subdivision furnish paving and curbing of the street alongside the subdivision. The City's assessment of these four owners' property makes them bear a burden which would have been spread throughout the entire subdivision by the developer if that waiver had not been given. This seems particularly arbitrary when we note the fact that these four lots do not have direct access to Antilley Road. They are separated from that road by a fence which the City required the developer to build as a condition for the City's approval of the subdivision.

I would affirm the judgment of the District Court.